511 A.2d 512

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Philip S. MARANO.**

**Misc. Docket (Subtitle BV) No. 19, Sept. Term, 1985.**

Court of Appeals of Maryland.

July 15, 1986.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Asst. Bar Counsel for the Attorney Grievance Com'n of Maryland, for Petitioner.

No Appearance on Behalf of Respondent.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

SMITH, Judge.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition, pursuant to Maryland Rule BV9, seeking disciplinary action against Philip S. Marano, a member of the Maryland Bar since November 9, 1956. Bar Counsel charged violations of Disciplinary Rules 1–102(A)(1), (3), (4), (5) and (6); 5–104(A); 6–101(A)(1), (2) and (3); 7–101(A)(1), (2) and (3); 9–102(A)(1), (2) and (B)(1), (3) and (4).[1] He also was charged with violation of Maryland

---

1. The rules in question state in relevant part:
   "DR 1–102
   Misconduct.
   (A) A lawyer shall not:
      (1) Violate a Disciplinary Rule.
      (2) . . .
      (3) Engage in illegal conduct involving moral turpitude.
      (4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.
      (5) Engage in conduct that is prejudicial to the administration of justice.
      (6) Engage in any other conduct that adversely reflects on his fitness to practice law."
   "DR 5–104
   Limiting Business Relations with a Client.
      (A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."
   "DR 6–101
   Failing to Act Competently.
   (A) A lawyer shall not:
      (1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
      (2) Handle a legal matter without preparation adequate in the circumstances.
      (3) Neglect a legal matter entrusted to him."
   "DR 7–101
   Representing a Client Zealously.
   (A) A lawyer shall not intentionally:
      (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by

Code (1957, 1981 Repl.Vol., 1985 Cum.Supp.) Art. 10, § 44.[2]
We shall disbar.

___

being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.

(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B)."

"DR 9–102

Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or a law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:

(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

(2) ...

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

**2.** Code (1957, 1981 Repl.Vol., 1985 Cum.Supp.) Art. 10, § 44 provides in relevant part:

"(a)(1) If any attorney is entrusted with, or receives and accepts, or otherwise holds, deposit moneys or other trust moneys, of whatever kind or nature, such moneys, in the absence of court order to the contrary shall be expeditiously deposited in an account or accounts maintained as a separate account or accounts for funds belonging to others. In no event shall the attorney commingle any such funds with such attorney's funds or use any such funds for any purpose other than the purpose for which they were entrusted to the attorney."

\*     \*     \*     \*     \*     \*

"(b) Any attorney wilfully violating the provisions of this section shall be charged with professional misconduct, malpractice, or con-

## I

Pursuant to Rule BV9 b we referred the matter for hearing to one of the judges of the Circuit Court for Baltimore City to make findings of fact and conclusions of law. He has filed a comprehensive report with us in which he states:

*"FINDINGS OF FACT & CONCLUSIONS OF LAW*

    \*      \*      \*      \*      \*      \*

"The gravamen concerning the Respondent's conduct In the Matter of the Estate of Andrew Melnick involves his handling of funds of the estate. Briefly summarized, an inventory was not filed until some ten (10) months after the estate was opened and listed an asset of $52,500 'in account with Philip S. Marano, various loans, etc.' Subsequent to the Respondent being removed as Personal Representative and a successor appointed he failed to account for his debt, and any transactions between himself and the deceased.

"On February 7, 1984 the Orphans' Court of Baltimore City held Mr. Marano in contempt for failure to produce records evincing the debt. There were further uncomplied with orders of the Orphans' Court. However, the debt was in fact ultimately paid plus interest by the Respondent.

"It is alleged that the funds to repay the estate were obtained with loans from clients. The Petitioner contends that the clients were never informed of the purpose of the loans."

    \*      \*      \*      \*      \*      \*

---

duct prejudicial to the administration of justice and shall be proceeded against for reprimand, suspension, or disbarment under any applicable provision of this article or any other law or the Maryland Rules.

"(c) Any attorney wilfully violating the provisions of this section, in addition to the penalties set forth in subsection (b) of this section, shall be guilty of a misdemeanor for each such violation and, on conviction thereof, shall be fined not more than five thousand dollars ($5,000) or be imprisoned for not more than five (5) years, or both in the discretion of the court."

"The initial complaint in BC Docket No. 85–21–4–2 concerns the Respondent's conduct as attorney for the estate of Daniel E. DeBarge. In this matter a Petition for Probate was filed May 10, 1974 in the Orphans' Court for Baltimore City. Despite notices from the Court the Respondent failed to have a list of interested persons, an information report, an inventory nor accounting timely filed. Many of these items not being filed until August, 1984. Broadly stated the Respondent is alleged to have improperly represented the Personal Representative and take the necessary action to close the estate in a timely manner."

\*   \*   \*   \*   \*   \*

"Also in the aforementioned complaint, the Respondent is again alleged to have improperly represented the Personal Representative In the Matter of the Estate of Adeline Annarelli who died intestate June 2, 1973. A Petition for Probate was filed August 7, 1973 in the Orphans' Court for Baltimore City.

"It is contended that Mr. Marano failed to timely file accountings, and documents necessary to close the estate in a timely manner despite numerous notices from the Court. The First and Final Administration Account was not filed until August, 1984."

\*   \*   \*   \*   \*   \*

"Allegations of the same type conduct are the basis for the charge concerning the George E. Banks estate. The decedent passed November 21, 1974 and a Petition for Probate was filed in the Orphans' Court for Baltimore City November 25, 1974.

"Accounts and documents necessary to close the estate were not timely filed. The First and Final Administration Account was not filed until August, 1985.

"It is contended that this conduct constituted a failure to properly represent the Personal Representative and

take necessary steps to close the matter in a timely manner."

\*     \*     \*     \*     \*     \*

"In the matters at Bar every opportunity was afforded the Respondent to present evidence to rebut the charges. Additionally, no effort was made to vacate the Order of Default filed December 4, 1985."

The trial judge concluded that Marano violated DR 1–102(A)(1), (3), (4), (5), and (6); DR 5–104(A); DR 6–101(A)(1), (2), and (3); DR 7–101(A)(1), (2), and (3), and DR 9–102(A)(1) and (2).

## II

There were no exceptions filed by Bar Counsel or Respondent. Indeed Respondent has failed to appear at all stages of the proceedings to answer these charges.

Marano's acts regarding the Melnick estate bear a strong resemblance to those before the Court in *Attorney Griev. Comm'n v. Pattison*, 292 Md. 599, 441 A.2d 328 (1982), where an attorney purported to loan himself $28,900.00 from an estate. We there said:

"So often attorneys for one reason or another find themselves in a position where the flow of cash in their practice is insufficient to meet office overhead, family needs, and the like. Then comes the temptation to dip into funds which have been entrusted to the attorney, with the thought that the money soon can and will be paid back and the hope that no one will be wiser. Often, as here, the peculations grow and grow. It is fundamental that a fiduciary may not make a loan, secured or unsecured (as was this), unto himself." 292 Md. at 607–08, 441 A.2d at 332.

The DeBarge, Annarelli and Banks complaints all involve substantial neglect over a ten-year period. Marano was the recipient of a private reprimand in 1976 for failure to file suit on behalf of a client which resulted in the claim being barred by limitations. We suspended him for neglect in

*Attorney Griev. Comm'n v. Marano,* 299 Md. 633, 474 A.2d 1332 (1984).[3]

■ The fact that Marano has not heeded prior admonitions is a serious factor to be taken into consideration in determining sanction. See *Md. St. Bar Ass'n v. Phoebus,* 276 Md. 353, 347 A.2d 556 (1975). As we said in *Pattison* and have said repeatedly, absent extenuating circumstances, disbarment is the sanction which should be imposed upon an attorney for converting the funds of his client to his own use. It follows, therefore, that the name of Philip S. Marano shall be stricken from the rolls of those entitled to practice law in this State.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COST OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV 15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST PHILIP S. MARANO.

---

**3.** This decision was filed on May 25, 1984. The DeBarge, Annarelli and Banks estates were opened in 1973 and 1974. Two of them were closed in August 1984, but one was not closed until August 1985.