825 A.2d 418

**ATTORNEY GRIEVANCE COMMISSION**

v.

**Dushan S. ZDRAVKOVICH.**

**Misc. Docket AG No. 41, Sept. Term, 2002.**

Court of Appeals of Maryland.

June 9, 2003.

Melvin Hirshman, Bar Counsel, John C. Broderick, Asst. Bar Counsel for Atty. Grievance Com'n, for petitioner.

Carlton M. Green (Walter W. Green), College Park, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BATTAGLIA, J.

Pursuant to Maryland Rule 16–709(a),[1] Bar Counsel, at the discretion of the Review Board and on behalf of the Attorney Grievance Commission, Petitioner, filed a Petition for Disciplinary Action against Respondent, Dushan S. Zdravkovich, who has been a member of the Bar of this Court since November 1, 1981. The Respondent had been suspended indefinitely from the active practice of law on December 4, 2000, effective thirty days thereafter. *Attorney Grievance Comm'n v. Zdravkovich*, 362 Md. 1, 762 A.2d 950 (2000).[2]

In his Petition, Bar Counsel alleged that, with respect to a complaint filed by Milton E. Siegert, Jr., and with respect to

---

1. Rule 16–709(a) provides: "Charges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board." This case arose and was processed under the attorney grievance rules in effect on June 30, 2001, as they were stated in the 2001 edition of the Maryland Rules pursuant to our order adopting the new Attorney Grievance Rules, in which we specifically "ORDERED ... [t]hat any matter pending before an Inquiry Panel, the Review Board, or the Court of Appeals pursuant to charges, a petition, or an application pending as of June 30, 2001 shall continue to be governed by the Rules in effect on June 30, 2001." Md. Rules Orders, p. 56, Maryland Rules of Procedure, vol.1 (2002).

2. Respondent also has received an unpublished reprimand, by order of this Court dated February 3, 1999, as the result of a reciprocal discipline case from the District of Columbia. In *In re Dushan S. Zdravkovich*, 671 A.2d 937 (D.C.App.1996), Zdravkovich received a 60–day suspension which was stayed.

Respondent's representation of Charles Hunter, III, Respondent violated Maryland Rules of Professional Conduct (hereinafter "MRPC") 1.4 (Communication)[3], 1.15 (Safekeeping of Property),[4] 8.1 (Bar Admission and Disciplinary Matters),[5] 8.4 (Misconduct),[6] Maryland Code, § 10–306 of the Business Occu-

---

3. **Rule 1.4. Communication.**

    (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

    (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

4. **Rule 1.15. Safekeeping property.**

    (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

    (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

    (c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

5. **Rule 8.1. Bar admission and disciplinary matters.**

    An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

    (a) knowingly make a false statement of material fact; or

    (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

6. **Rule 8.4. Misconduct.**

pations and Professions Article (1989, 2000 Repl.Vol.,),[7] and Maryland Rule 16–607.[8]

The procedural history of this matter has importance because of Respondent's exceptions, so it will be reiterated in

---

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
(e) state or imply an ability to influence improperly a government agency or official; or
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

7. § 10–306. Misuse of trust money.
A lawyer may not use trust money for any purpose other than the *purpose for which the trust money is entrusted to the lawyer.*

8. Rule 16–607. Commingling of funds.
a. General prohibition. An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.
b. Exceptions.
1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610 b 1(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.
2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.
3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners.

detail. After the Honorable Michael E. Loney of the Circuit Court for Anne Arundel County was designated, on August 23, 2003, to hear and to determine the charges contained in the Petition for Disciplinary Action,[9] the Respondent, represented by counsel, propounded Interrogatories and a Request for Production of Documents, which were "hand-delivered" on August 29, 2002 to Bar Counsel. "Irreconcilable differences" arose between Respondent and his counsel about the appropriate way to respond to the Petition, whether by Answer or Motion for More Definite Statement.[10] Counsel for Respondent moved to withdraw their appearances on September 26 and 30, 2002. The order striking their appearances was entered on October 4, 2002 by Judge Loney. Appended to that order was a pleading captioned, "Notice to Employ New Counsel", which stated: [11]

It appears from the record in the above entitled case that you are not presently represented by counsel.

You are hereby notified this day, that your failure to have new counsel enter his appearance in this case within fifteen (15) days after service upon you of this notice shall not be grounds for postponing any further proceedings, concerning the case. You are warned that without counsel to protect your interests in the case, you risk a nonsuit or judgment by default and all court costs being ordered against you by the court.

All future notices to you will be sent to the address to which this notice is being sent. Please inform the clerk of

---

9. Originally, Judge Paul Hackner was so designated and recused himself as the Judge assigned to preside. That designation also was rescinded when Judge Loney was substituted.

10. Maryland Rule 2–322(d) states in part:

**Motion for more definite statement.** If a pleading to which an answer is permitted is so vague or ambiguous that a party cannot reasonably frame an answer, the party may move for a more definite statement before answering.

11. The record reflects that the attorneys for the Respondent returned all of the material related to their representation to the Respondent on October 23, 2002.

any change of address. Failure to do so may result in a default judgment against you.

The day before the order striking appearance of counsel was entered, October 3, 2002, Bar Counsel filed a Notice with the Court, pursuant to Maryland Rule 2–401(d)(2),[12] that on October 1, 2000, Interrogatories and Request for Admissions of Fact addressed to Respondent were sent directly to him. On October 18, 2002, Bar Counsel moved for an Order of Default against Zdravkovich alleging that he was served, on September 1, 2002, with a copy of the Petition for Disciplinary Action and failed to respond to the charges within 15 days of the date of service pursuant to order of the Court of Appeals dated August 13, 2002, a copy of which also had been served upon Respondent.

Judge Loney granted the Motion on October 30, 2002 and entered an Order of Default against the Respondent informing him that he could move to vacate the order within 30 days after entry and further giving leave to Bar Counsel to present "such evidence as it deems necessary to allow the court to carry out its function under Maryland Rule 16–711a."[13] A hearing was scheduled for December 18, 2002.

The proceedings thereafter became more volatile when on November 8, 2002, Respondent filed a Motion for More Definite Statement, alleging that the Petition for Disciplinary Action "sets forth no facts, whatsoever, describing the mecha-

---

**12.** Rule 2–401(d)(2) provides in part:

Except as otherwise provided in these rules or by order of the court, discovery material shall not be filed with the court. Instead, the party generating the discovery material shall serve the discovery material on all other parties and shall file with the court a notice stating (A) the type of discovery material served, (B) the date and manner of service, (C) the party or person served.

**13.** A "Notice of Default Order" was appended to the Order which states:

You are hereby notified that an Order of Default has been entered against you in the above entitled case on 11/01/2002.

You may move to vacate the Order of Default within (30) Days of the date of entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.

nism through which these alleged violations occurred" and "no facts, whatsoever, describing the violations of the Respondent" and that, as a result, he "cannot frame an answer as required by Maryland Rule 2–323." Bar Counsel responded with a motion to Strike, alleging that Respondent's Motion for More Definite Statement would have been permissible under Rule 2–322(d) "before answering," "[y]et the time within which the Respondent is obliged to answer has passed making his motion untimely." Bar Counsel further alleged that the more definite statement Respondent sought to obtain "serve[s] in fact to replace an attempt at discovery, a procedure which, through his default, the Respondent may have abrogated," noting that, "Respondent had an opportunity to attend and participate in an Inquiry Panel proceedings[sic]" during which he "obtained the entire investigative file of the Petitioner, and had available to him the full measure of the subpoena powers granted under Maryland Rule, then in effect, 16–706d3(c)."

Respondent, on December 9, 2002, filed an Opposition to the Motion to Strike and also moved to strike or set aside the Order of Default, ostensibly because "the procedural requirements for entry of Order of Default had not been met." The day after these pleadings were filed, a "Blue Note" denying Respondent's Motion for More Definite Statement was filed, which had been signed by Judge Rodney C. Warren on December 2, 2002.[14]

On December 18, 2002, Judge Loney held the previously scheduled hearing in the case and concurred with Judge Warren in striking Respondent's Motion for More Definite Statement because it was "time-barred." Judge Loney also denied the Motion to Strike or in the Alternative to Set Aside the Order of Default, which the Respondent argued required a proof of service. Two motions also were filed by Respondent in Court that day, a Motion to Strike Petitioner's Request for Discovery and a Motion for Order of Default based upon the alleged failure of Bar Counsel to respond to discovery, i.e.,

---

14. It appears that Judge Warren was the Chambers Judge at that time.

requests for production of documents, interrogatories, and a notice of deposition, all of which had been sent by Respondent's prior counsel on August 29, 2002. Both of those motions were denied.

After the hearing judge entered these rulings, Respondent left the proceedings. Bar Counsel introduced the unresponded to Requests for Admissions, which were admitted, the Petition for Disciplinary Action, the averments of which were admitted by operation of the default order, and proposed Findings of Fact. On January 6, 2003, the hearing judge entered the following Findings of Fact and Conclusions of Law:

"This matter came before the Court on December 18, 2002, on a Petition for Disciplinary Action filed by the Attorney Grievance Commission of Maryland against Dushan S. Zdravkovich. The Petition was filed in accordance with Maryland Rule 16–709, *et seq.* and an Order of Default was entered against Respondent for failing to answer the Petition. At the hearing, the Court granted the Request for Admissions of Facts and held the case *sub curia.* The Court having reviewed the file, as well as the request for admissions of facts, and having considered all of the case law cited and the arguments of John C. Broderick, Esquire, Bar Counsel, the Court makes the following findings of facts and conclusions of law as required by the Maryland Rules of Procedure.

## BACKGROUND

"Respondent, Dushan S. Zdravkovich, was admitted to the Maryland Bar on November 1, 1981. Presently, Respondent is suspended indefinitely from the active practice of law. (*See Attorney Grievance Commission v. Zdravkovich,* 362 Md. 1, 762 A.2d 950 (2000)).

"Petitioner, Attorney Grievance Commission of Maryland, filed a Petition for Disciplinary Action in the Court of Appeals. On August 13, 2002, the Court of Appeals ordered that the matter be transmitted to the Circuit Court for Anne Arundel County to be heard and determined.

"On September 1, Counsel for Respondent accepted service of the Petition on behalf of Respondent. On October 1, Petitioner served Respondent Interrogatories and Request for Admission of Facts.[15]

[15] The hearing judge included a footnote 1 in his opinion that stated, "The Interrogatories and Request for Admissions of Fact were mailed directly to Respondent, not his counsel."

"On October 4, 2002, the Court granted the Motion to Strike the Appearance of Respondent's Counsel Thomas A. Pavlinic, Esquire and Steven J. Parrott, Esquire. On October 30, 2002, the Court entered an Order of Default for Respondent's failure to answer the Petition. On December 18, 2002, the Court denied Respondent's Motion for a More Definite Statement.

"On December 18, 2002, the case was called in open court. Respondent was present and represented himself Pro–Se. He presented a Motion to Strike or in the Alternative Motion to Set Aside Order of Default, Motion for Order of Default, and Motion to Strike Petitioners Requests for Discovery. The Court denied all the Motions and Respondent elected to leave the hearing. The Court granted the Request for Admissions of Facts and held the case *sub curia.*

### Complainant Milton E. Siegert, Jr.
### FACTS

"Complainant, Milton E. Siegert, Jr., and his brothers, retained the Respondent to represent them in matters that arose as a result of the death of their father, Milton Edward Siegert, Sr. At the request of Respondent, the Siegerts paid to Respondent $300 which was to be used to retain and employ an investigator, Carl Yowell.

"On March 17, 2000, Complainant notified Respondent that he was terminated of his representation. Complainant alleged several causes for the termination: Respondent failed to appear at a District Court for Anne Arundel County proceeding on February 18, 2000 in Case No. 2071000081; on March 6, 2000, Respondent incorrectly informed Complainants that a deposition on March 9, 2000 at 1:00 P.M. was cancelled;

Respondent failed to appear for deposition scheduled on March 9, 2000 at 1:00 P.M. which resulted in Complainant being unrepresented at the deposition; Respondent failed to answer a Motion to Compel in Estate No. 44634 in the Orphans' Court for Anne Arundel County. Complainant also complained of alleged misappropriated funds. Complainant demanded Respondent return the $300 for Carl Yowell and an accounting of $1000 from Frank Bradley for rent of Complainant's deceased father's property located at 815 Parkwood Avenue.

"On March 16, 2000, Complainant filed a complaint with Petitioner alleging the above stated misconduct. On March 24, 2000, Petitioner informed Respondent of the disciplinary investigation. Petitioner requested accounting of the alleged misappropriated funds, an accounting of all funds received from Complainant and his brother, an indication which account those funds were deposited into, and provide copies of the bank records pertaining to the safekeeping of those funds. Petitioner also requested copies of bank statements for the period from one month prior to receipt of the funds of Complainant to the present date, copies of the front and back of all checks drawn against the account, copies of all deposited items, and any ledgers or journals maintained by him on behalf of the Complainant. Respondent was also reminded of his obligation to comply under Maryland Rules of Professional Conduct 8.1.

"On April 7, 2000, Respondent answered Petitioner's inquiry. Respondent only provided a simple denial of the accusations against him and failed to provide any factual detail or accounting. On April 12, 2000, Petitioner notified Respondent that he failed to account for the funds received in connection with the representation of the Siegerts and failed to provide the bank records requested. On April 17, 2000, Respondent replied that 'I have respectfully declined to comply with your request as styled.' On May 2, 2000, Petitioner sent a third request for information regarding the matter. Respondent never answered.

"During the investigation of the complaint, Petitioner learned of a misappropriation of funds by Respondent in connection with his representation of Charles Hunter, III. Mr. Hunter had entrusted Respondent with $15,552.00." "Petitioner assigned an investigator to determine if the allegations of the Complainant were true and whether there was any further misconduct in connection with Mr. Hunter. On November 22, 2000, Petitioner's investigator sent a letter to Respondent requesting all bank records related to the Siegert and Hunter representations. Respondent failed to answer. Because of Respondent's failure to answer, Petitioner then subpoenaed Prince George's Federal Savings Bank.

"Petitioner discovered that on November 6, 1999, Respondent deposited a check from Charles Hunter in the amount of $15,552.00. Six days later, Respondent drew $1,000.00 upon the escrow to pay Erma Assberry, Esquire. This payment had no connection with Mr. Hunter's representation. Respondent also made several withdraws via electronic transfer from the escrow account to his personal account: $1,000 on November 18, $2,000 on November 29, $700 on December 27, $1,200 on January 1, $2,000 on January 24, and $1,000 on February 25. On February 25, Respondent had misappropriated $9,292.11 of Mr. Hunter's funds.

"Respondent replenished the escrow account. On April 1, Respondent deposited into the escrow account a check written to him from a Zoran Zdravkovich in the amount of $8,000.00. On April 13, 2000, Respondent deposited an additional $1,400.00 into his escrow account from his personal account. With these deposits, the balance of the escrow account was $15,909.89 which were clearly necessary to cover check number 1046 written on April 12, 2000 to Charles Hunter in the amount of $15,552.00.

## CONCLUSION OF LAW

"Petitioner urges the Court to find that Respondent violated Md. Ann.Code Bus. Occ. & Prof. § 10–306, which states:

A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

"Petitioner also urges the Court to find that Respondent violated Maryland Rule 16–607, which states:

a. General Prohibition. An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.

b. Exceptions.

1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610 b 1(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners.

"The Court finds, by clear and convincing evidence, that Respondent has violated Business Occupations and Professions Article § 10–306 and Maryland Rule 16–607. Specifically, Respondent failed to return the $300 paid by Complainant

for Ms. Yowell's services, he failed to safeguard rent monies of Complainant's father's estate, and he comingled Mr. Hunter's funds with his own funds.

"Petitioner also urges the Court to find that Respondent has violated Maryland Rules of Professional Conduct 1.4, 1.15(a) and (b), 8.1(b), and 8.4(b), (c), and (d). Maryland Rules of Professional Conduct 1.4 states:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding representation.

"Based on the evidence presented by Petitioner, the Court finds by clear and convincing evidence that Petitioner violated Maryland Rules of Professional Conduct 1.4. Specifically, Respondent failed to keep Complainant informed with regards to the deposition on March 9 and he misrepresented to Complainant on March 6 that the March 9 deposition was canceled.

"Maryland Rules of Professional Conduct 1.15 states in part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the

client or third person, shall promptly render a full accounting regarding such property.

"Based on the evidence presented by Petitioner, the Court finds by clear and convincing evidence that Respondent violated Maryland Rules of Professional Conduct 1.15. Specifically, Respondent failed to return the $300 paid by Complainant for Ms. Yowell' s services, he failed to safeguard rent monies of Complainant's father's estate, and he comingled Mr. Hunter's funds with his own funds.

"Maryland Rules of Professional Conduct 8.l(b) states:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter; or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

"Based on the evidence presented by Petitioner, the Court finds by clear and convincing evidence that Respondent violated Maryland Rules of Professional Conduct 8.l(b). Specifically, that Petitioner made request for information on March 24, 2000, April 12, 2000, May 2, 2000, and November 22, 2000, filed a Petition for Disciplinary Action, and Interrogatories and Request for Admissions. Respondent failed to comply with any of Petitioner's requests.

"Maryland Rules of Professional Conduct 8.4(b), (c), and (d) states:

It is professional misconduct for a lawyer to:

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice.

"Based on the evidence presented by Petitioner, the Court finds by clear and convincing evidence that Petitioner violated the above stated Maryland Rules of Professional Conduct 8.4. Specifically, Respondent misappropriated funds of Complainant and Mr. Hunter and failed to timely file answers and responses to Court pleadings."

I. *Exceptions*

Bar Counsel has excepted to the Findings of Fact and Conclusions of Law insofar as they include a conclusion that Rules 8.1(b) and 8.4(d) were violated as a result of Respondent's failure to answer the Petition for Disciplinary Action, Interrogatories, and Request for Admissions of Fact, since this behavior was not the subject of violations charged in the Petition.

Zdravkovich also filed exceptions to the Findings of Fact and Conclusions of Law, which were supplemented by a brief in which the Respondent challenged the hearing judge's denial of the motion to vacate the Order of Default.[15] Respondent asserts that his failure to file a responsive pleading was the fault of his counsel and that on September 9, 2002, he specifically had requested that they file a Motion for More Definite Statement. Thereafter, when his attorneys withdrew in early October, Respondent requested and received his case file on October 28, 2002 and filed his Motion for more Definite Statement on November 8, 2002.

Respondent also challenges the admissibility of the Request for Admissions, which were deemed admitted because Respondent failed to respond within 30 days after service of the

---

**15.** The Respondent also challenged Judge Warren's denial of the Motion for More Definite Statement because he was not the judge assigned to this matter. Because Judge Loney, the assigned judge, did specifically deny the Motion for More Definite Statement during the hearing on December 18, 2002, we will not address Judge Warren's denial of the motion.

requests. His bases for requesting the withdrawal of the putative admissions are muddled, but appear to be that the filing of the Motion for More Definite Statement and his appearance before the Inquiry Panel contested the Request for Admissions so that the hearing judge abused his discretion in refusing their withdrawal.

Finally, Respondent alleges that neither the Order of Default entered on November 1, 2002, nor all of the papers filed prior to its entry were served upon him in accordance with Maryland Rule 1–321.

## II. *Standard of Review*

This Court exercises " 'original and complete jurisdiction for attorney disciplinary proceedings in Maryland,' and conducts 'an independent review of the record.' " *Attorney Grievance Comm'n v. Blum*, 373 Md. 275, 293, 818 A.2d 219, 230 (2003) (quoting *Attorney Grievance Comm'n v. McLaughlin*, 372 Md. 467, 492, 813 A.2d 1145, 1160 (2002) (citations omitted)). "In conducting that review, we accept the hearing judge's findings of fact as *prima facie* correct unless shown to be 'clearly erroneous,' and we give due regard to the hearing judge's opportunity to assess the credibility of witnesses." *Attorney Grievance Comm'n v. Wallace*, 368 Md. 277, 288, 793 A.2d 535, 542 (2002) (citation omitted). "As to the hearing judge's conclusions of law," however, " 'our consideration is essentially *de novo*.' " *Attorney Grievance Comm'n v. Dunietz*, 368 Md. 419, 428, 795 A.2d 706, 711 (2002) (quoting *Attorney Grievance Comm'n v. Thompson*, 367 Md. 315, 322, 786 A.2d 763, 768 (2001) (quoting *Attorney Grievance Comm'n v. Briscoe*, 357 Md. 554, 562, 745 A.2d 1037, 1041 (2000))). This is true even where default orders have been entered by the hearing judge. *Attorney Grievance Comm'n v. Harrington*, 367 Md. 36, 49, 785 A.2d 1260, 1268 (2001).

## III. *Discussion*

The gravamen of this case is whether a default order should have been entered in the present matter, because the charges, if sustained, could form the basis for disbarment of Respon-

dent, who is presently indefinitely suspended from the practice of law. On the one hand, it is clear on the record of this case that no answer to the Petition for Disciplinary Action was filed in this case by September 16, 2001 and, in fact, no formal pleading captioned "Answer" has ever been filed. It also is true, however, that: Respondent was represented by counsel at the time the Answer was originally due; that counsel later withdrew because of disagreements with the Respondent over the appropriate responsive pleading; that the record reflects that Respondent filed his Motion for More Definite Statement within a short time after he secured his file from his counsel; that the Motion for More Definite Statement was filed within seven days after the Notice of Default Order was issued; that Respondent and Petitioner exchanged pleadings thereafter; and that Respondent did appear at the evidentiary hearing, albeit he left when his various motions were denied by the trial judge; and that he did appear before this Court.

The cases in this Court that have sustained the entry of default orders are numerous and reflect our aversion for attorneys' disregard of the rules. In *Attorney Grievance Comm'n v. Faber*, 373 Md. 173, 179, 817 A.2d 205, 208–09 (2003), we noted that the respondent failed to appear in support of his exceptions and that the trial judge made detailed findings regarding the issue challenged by the respondent. In *Attorney Grievance Comm'n v. Fallin*, 371 Md. 237, 239–40, 243, 808 A.2d 791, 793–94 (2002), Fallin failed to file a motion to vacate within a 30–day period after a default order against him was filed, failed to appear at a scheduled hearing even though he had faxed a Motion to Vacate the Order of Default to the hearing judge on the day of the hearing, and failed to appear before this Court.

In *Attorney Grievance Comm'n v. McCoy*, 369 Md. 226, 230 n. 12, 237, 798 A.2d 1132, 1134 n. 12, 1138 (2002), McCoy did not move to vacate the Order of Default and presented no argument before this Court. In *Dunietz*, 368 Md. at 421–22, 795 A.2d at 707, Dunietz did not present any argument to this Court and did not move to vacate the Order of Default. In *Wallace*, 368 Md. at 282, 793 A.2d at 538, Wallace did not

appear for the evidentiary hearing before the hearing judge and for argument before this Court. In *Harrington*, 367 Md. at 37–38, 785 A.2d at 1261, Harrington failed to file a request to vacate the Order of Default and failed to appear for the evidentiary hearing and for argument in the Court of Appeals.

In *Attorney Grievance Comm'n v. Middleton*, 360 Md. 34, 37, 756 A.2d 565, 567 (2000), Middleton failed to appear at the disciplinary hearing and failed to move to vacate the default judgment. On the day of argument before this Court, Middleton represented he did not receive the Order of Default due to his change of address. *Id.* We rejected that contention, iterating that Middleton had no one to blame but himself for his non-receipt as he was obliged to notify the court and Bar Counsel of his current address. *Id.* at 46, 756 A.2d at 572.

In *Attorney Grievance Comm'n v. Briscoe*, 357 Md. 554, 557, 745 A.2d 1037, 1038–39 (2000), Briscoe did not request that the Order of Default be vacated and did not appear at the evidentiary hearing. In *Attorney Grievance Comm'n v. Willcher*, 340 Md. 217, 218, 665 A.2d 1059 (1995), Willcher did not request that the default order be vacated and did not appear for argument in this Court. In *Attorney Grievance Comm'n v. David*, 331 Md. 317, 318–19, 628 A.2d 178, 178–79 (1993), David did not timely file a motion to vacate the default order, personally did not attend the evidentiary hearing, and did not file any exceptions to the trial judge's findings of fact and conclusions of law.

In *Attorney Grievance Comm'n v. Hopp*, 330 Md. 177, 179–81, 179–80, 623 A.2d 193, 194 (1993), this Court denied a motion to dismiss and thereafter a default order was issued by the hearing judge. Hopp filed an incomplete motion to vacate, repeating the bases of the Motion to Dismiss, which was stricken. *Id.* at 181, 623 A.2d at 195. He did not appear at the evidentiary hearing. *Id.* In *Attorney Grievance Comm'n v. Kerpelman*, 323 Md. 136, 146, 591 A.2d 516, 521 (1991), a default judgment was entered against Kerpelman on a specific complaint, after Kerpelman willfully and contumaciously failed

to obey a court order compelling supplementary answers to interrogatories.

In other cases filed before 1990, orders of default were entered in cases in which the attorneys did nothing to defend their actions. *Attorney Grievance Comm'n v. Trilling,* 311 Md. 711, 537 A.2d 269 (1988); *Attorney Grievance Comm'n v. Draper,* 307 Md. 435, 514 A.2d 1212 (1986); *Attorney Grievance Comm'n v. Marano,* 306 Md. 792, 511 A.2d 512 (1986); *Attorney Grievance Comm'n v. Bettis,* 305 Md. 452, 505 A.2d 492 (1986).

In *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 472, 800 A.2d 782, 788 (2002), this Court deferred a decision in a default order case in order to give Powell an opportunity to comply with the discovery requests of Bar Counsel and to file his answers with the Clerk of the Court of Appeals. Powell was to be afforded an evidentiary hearing as to the charges, which were to have adhered to the Court's Order. *Id.* Powell's appearance at the argument before this Court, his alleged failure to have received the discovery requests, and his medical problems were considerations affecting the decision of the Court. *Id.* Subsequently, Powell filed untimely, incomplete, evasive, and false answers, and he was disbarred. *Id.* at 476, 800 A.2d at 790.

In *Attorney Grievance Comm'n v. Middleton,* Judge Rodowsky speaking for the Court applied Maryland Rule 2–613(b) to the determination of whether to vacate an Order of Default. 360 Md. at 46–47, 756 A.2d at 572–73. Rule 2–613(b) states:

> (b) Order of Default. If the time for pleading has expired and a defendant has failed to plead as provided by these rules, the court, on written request of the plaintiff, shall enter an order of default. The request shall state the last known address of the defendant.

Judge Rodowsky noted that one of the factors to consider in assessing the propriety of setting aside an Order of Default is the reason for the default. In the present case, albeit through a process of culling the record, we are able to determine that

an Answer was not filed on September 16, 2002, because Respondent and his counsel differed as to whether an Answer or a Motion for More Definite Statement should have been filed, and then counsel withdrew. That Respondent favored the filing of a Motion for More Definite Statement is obvious, from his filing the same after the Order of Default was entered.

■ This review of our decisions regarding default orders in attorney grievance matters yields the conclusion that in this matter, we will follow our reasoning in *Powell.* This decision is limited to the unique circumstances presented in this case wherein Respondent had counsel at the time the answer was due, such counsel withdrew (after the due date for the Answer had passed) as a result of a difference of opinion about the type of response to file, Respondent filed a Motion for More Definite Statement within the 30–day period after the Order of Default was entered and the Motion was not ruled upon until the day of the evidentiary hearing. Respondent also appeared at the evidentiary hearing and appeared before this Court, after having filed extensive exceptions.

We shall defer a further decision in this matter to give Respondent an opportunity to answer the Petition for Disciplinary Action and to comply with the discovery requests of Bar Counsel and to file his answers with the Clerk of the Court of Appeals within 60 days of the date of filing of this order. In doing this, we sustain the ruling of the trial court in denying the Motion for More Definite Statement. In the event Respondent files the answers within the specified time, this Court will again refer the matter to the hearing judge for an evidentiary hearing as to the charges contained in the Petition for Disciplinary Action. Respondent also is advised that if he fails to file the answers within the appropriate time, this Court will proceed to consider this case on the present state of the record and enter its disposition in the matter.

**_IT IS SO ORDERED._**