838 A.2d 1213

# ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## Mahmoud ALSAFTY.

No. 93, Sept. Term, 2002.

Court of Appeals of Maryland.

Dec. 19, 2003.

Melvin Hirshman, Bar Counsel, Dolores O. Ridgell, Asst. Bar Counsel for Atty. Grievance Com'n, for petitioner.

Christopher M. Johns, Laurel, for respondent.

Argued before BELL, C.J., and ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, acting pursuant to Maryland Rule 16–751,[1] approved the filing by Bar Counsel of a Petition For Disciplinary or Remedial Action against Mahmoud Alsafty, the respondent. The petition filed by Bar Counsel charged him with misconduct, as defined by Maryland Rules 16–701(i),[2] and 16–812, and consisting of violations of various of the Maryland Rules of Professional Conduct, as adopted by the latter Maryland Rule. The petition alleged, in particular, that the respondent violated Rules 1.3, Diligence,[3] 1.4, Communication,[4] 5.5, Unauthorized Practice of Law,[5] 7.1, Communications Concerning a

---

* Eldridge, J. now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Maryland Rule 16–751 provides:

   "(a) Commencement of disciplinary or remedial action. Upon approval of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. Pursuant to Maryland Rule 16–701(i) " 'Professional misconduct' or 'misconduct' has the meaning set forth in Rule 8.4 of the Maryland Rules of Professional Conduct, as adopted by Rule 16–812. The term includes the knowing failure to respond to a request for information authorized by this Chapter without asserting, in writing, a privilege or other basis for such failure."

3. Pursuant to Maryland Rule 1.3, "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

4. Rule 1.4 provides:

   "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
   "(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

5. Rule 5.5 provides:

Lawyer's Services,[6] 8.4(b), (c) and (d), Misconduct,[7] of the Maryland Rules of Professional Conduct and Maryland Code (1989, 2000 Replacement Volume) §§ 10–601 and 10–606 of the Business Occupations and Professions Article.[8] We referred

"A lawyer shall not:

"(a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or

"(b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law."

**6.** Rule 7.1 provides:

"A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

"(a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;

"(b) is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the rules of professional conduct or other law; or

"(c) compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated."

**7.** Rule 8.4, as relevant, provides:

"It is professional misconduct for a lawyer to:

\*     \*     \*     \*     \*     \*

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(d) engage in conduct that is prejudicial to the administration of justice;"

\*     \*     \*     \*     \*     \*

**8.** Maryland Code (1989, 2000 Replacement Volume) §§ 10–601 and 10–606 of the Business Occupations and Professions Article provide, respectively:

" § 10–601. Practicing without admission to Bar.

"(a) *In general.* Except as otherwise provided by law, a person may not practice, attempt to practice, or offer to practice law in the State unless admitted to the Bar.

"(b) *Activities of lawyers on disciplinary status.* While an individual is on inactive status or disbarred or while the individual's right to practice law is suspended or revoked, the individual may:

"(1) discharge existing obligations;

"(2) collect and distribute accounts receivable; or

the case to the Honorable John C. Themelis, of the Circuit Court for Baltimore City, for hearing under Rules 16–752(a)[9] and 16–757(c).[10] Following the hearing, the hearing court found facts and drew conclusions of law.

The petitioner did not except to the hearing court's findings of fact or the conclusions of law with respect to the charged misconduct. It did except, however, to two findings made, and

"(3) perform any other act that is necessary to conclude the affairs of a law practice but that does not constitute practicing law.

"(c) *No defense to act through lawyer.* It is not a defense to a charge of a violation of this section that the defendant acted through an officer, director, partner, trustee, agent, or employee who is a lawyer."

" § 10–606. Penalties.

"(a) *Practice without admission; misrepresentation.*

"(1) A corporation, partnership, or any other association that violates § 10–601 or § 10–602 of this subtitle is subject to a fine not exceeding $5,000.

"(2) An officer, director, partner, trustee, agent, or employee who acts to enable a corporation, partnership, or association to violate § 10–601 or § 10–602 of this subtitle is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 1 year or both.

"(3) Except as provided in paragraphs (1) and (2) of this subsection, a person who violates § 10–601 of this subtitle is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 1 year or both."

9.  Rule 16–752(a) provides:

"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

10.  Maryland Rule 16–757(c) provides:

"(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

conclusions drawn, by the hearing court, but they were directed at findings made and conclusions drawn in connection with charges that were neither alleged, nor included, in the Petition for Disciplinary or Remedial Action.[11] The petitioner recommends the ultimate sanction, disbarment.

The respondent filed respondent's Exceptions to Findings of Fact and Conclusions of Law and recommendation of Sanction. His exception, in its entirety, states: "Respondent takes exception to the extent that Judge Themelis' [sic] found that Respondent intentionally violated MRPC 8.4 or any other provision in his finding." Rather than disbarment, his written recommendation is that he be suspended indefinitely from the practice of law, "with the right to reapply to practice law not less than an amount of time that the Maryland Court of Appeals deems appropriate under the circumstances."

The hearing court made findings of fact as follows. The respondent is a member of the New York State Bar. Although he has taken the Maryland Bar Examination on several occasions, he has not been successful and, therefore, is not authorized to practice law in Maryland. The hearing court found by clear and convincing evidence that the respondent did practice law in Maryland without a license from December 2000 until April 2002.

The respondent applied to take the Maryland Bar Examination in March 2001, approximately three months after the date the hearing court determined he had wrongfully begun to practice law in this State. In applying to take the Bar Exam, he stated that he did not have any condition or impairment that affected or could have affected his ability to practice law in a competent and professional manner. The respondent also

---

11. The hearing court found that the respondent violated Rule 7.5(a) of the Maryland Rules of Professional Conduct, prohibiting the use of firm names and letterhead in violation of rule 7.1, and Maryland Code (1989, 2000 Replacement Volume) § 10–602 of the Business Occupations and Professions Article, prohibiting the use of titles indicating authorization to practice. As the petitioner notes, neither was charged in the Petition for Disciplinary or Remedial Action. Accordingly, the exceptions are sustained.

failed to reveal that he was practicing law in Maryland or had an office for that purpose at 1600 Hanover Street, Baltimore. In response to a letter from a member of the 6th Appellate Circuit Character Committee, he did acknowledge that, "[s]ince by admission to United States District Court on February 23, 2001 to date I represent some indigent clients before the said court." Being ineligible to take the Maryland Out–of–State Attorneys' exam, despite his admission to the New York Bar, the respondent was required to take, and did take, the general bar examination.

The respondent's practice consisted of domestic, civil, bankruptcy and immigration cases.[12] He maintained a law office at 1600 South Hanover Street. In three of the windows of that office, in large gold letters, were the words, "Law Offices of Alsafty and Alsafty." The respondent's office stationary contained the letterhead, "Law Offices of Alsafty and Alsafty." In addition, he maintained possession and use of business cards, on which appeared, "Mahmoud Alsafty, ATTORNEY AT LAW, 1600 South Hanover Street, Baltimore, MD 21230 USA; (410) 385–8333, (410) 385–1233, Fax (410) 385–8333; Alsafty@aol.com." There was no indication on the stationary or the business cards that the respondent's practice was limited to federal courts.

The respondent's business cards were displayed and distributed from his office, where the petitioner's investigator was able to obtain one. They were also apparently displayed and distributed in other places, as well. One of the respondent's business cards was obtained by a future client at a mosque.

---

**12.** With regard to the allegation that the respondent was practicing law without a license, the hearing court observed:

"Respondent states that he did divorces for clients at no cost, an extension of his religious counseling, suggesting that he was not practicing law. In *Attorney Grievance Commission of Maryland v. James,* 355 Md. 465, 735 A.2d 1027 (1999), the Court of Appeals of Maryland said that the payment of fees is not a necessary element in the attorney-client relationship. Furthermore, he was paid $250 in a divorce case that he took for plaintiff Chihi in the Circuit Court for Baltimore City (case # 24–D–01–000603), and he was paid $2,000 by Abou–Bakr and Ahmed."

In light of the availability of the respondent's business cards at various locations, the hearing court concluded that, given the respondent's own testimony regarding his knowledge that his sister printed business cards for him, he knew or should have known that they would be circulated, as indeed they were. In addition, the hearing court determined that the respondent's business cards "included his Bar numbers for New York, Maryland Federal Court, and D.C. Federal Court." From the foregoing, it concluded:

"In this case, Respondent held himself out to be licensed to practice law in Maryland, by use of signs and letterhead that did not adequately advise prospective clients that he was not licensed to practice law in Maryland. [The inclusion of his Bar numbers] was insufficient to avoid giving the impression that he was licensed to practice in Maryland. The impression it gave was that respondent was admitted to practice law in Maryland and, in addition, in those other courts. It is a common practice to designate the other jurisdictions in which an attorney is licensed to practice in addition to the state where his/her principal offices are located. In addition, the business cards did not specify Respondent's practice was limited to Federal Courts, nor did he advise clients that he was not licensed to practice law in Maryland."

As a member of the Bar of New York the respondent was able to practice in the federal courts to which he was admitted, even though those courts are outside of New York. He was not, however, admitted to practice before the District Court for the District of Maryland until February 23, 2001, some two months after he began to practice in this State and after he started practicing in the federal court. Thus, for those two months, the hearing court concluded, the respondent was also "practicing law in Federal Court . . . without either a license to do so or the right to do so."

Aside from his legitimate federal practice in the areas of bankruptcy and immigration, the respondent represented clients in divorce actions in state courts located in Baltimore City and Baltimore County and in at least one civil action in

the District Court of Maryland, sitting in Baltimore City. It was, in fact, as a result of the representation in the latter case, an action against Bank of America, that the complaint giving rise to these proceedings was filed. Counsel for the bank wrote to Bar Counsel to inform him that the respondent, who was representing one Ashan Tahir in an action against the bank, was not a member of the Maryland Bar, a fact that the letter indicated the respondent had confirmed. In addition, Bar Counsel was provided with two letters, signed by the respondent, relating to the litigation with the bank. Both letters was on stationary with letterhead reading "Law Offices of Alsafty and Alsafty, at 1600 South Hanover Street." The letter addressed to the bank was signed, "Mahmoud Alsafty, Esquire" and contained a copy of a complaint and an attachment, both of which were signed by the respondent as the attorney for the plaintiff, Mr. Tahir.

With regard to the respondent's divorce practice, he filed pleadings in twenty cases during the applicable time period, nineteen (19) in Baltimore City and one (1) in Baltimore County. Moreover, the respondent appeared before a Baltimore City Domestic Relations Master on several occasions representing clients in uncontested cases, causing her to believe that he was a member of the Maryland Bar.[13]

Having obtained the respondent's card at a mosque, Ashraf Abou–Bakr contacted the respondent in March 2001, and retained him, on behalf of Yasser Ahmed, his nephew, to obtain for Ahmed a labor certification, which would permit Ahmed to work in Abou–Bakr's restaurants, and which would ultimately result in a green card, *i.e.* permanent alien status. The respondent charged a fee of $2000, of which Abou–Bakr paid, $1000 ($300 up front and an additional $700 before he left for Egypt). The remainder was paid by Ahmed. Although

---

13. In testimony given pursuant to subpoena issued in accordance with Maryland Rule 16–732, Investigative Subpoena, the respondent admitted filing the pleadings, confirmed his signature on the pleadings and admitted that he was not a member of the Maryland Bar. The respondent similarly acknowledged that he appeared on behalf of the plaintiff Tahir in District Court in the action against the Bank of America.

the respondent filed for the labor certification the next month, he failed to advise Ahmed of an option that would expedite the process and save him a year of waiting time and which the respondent had used when representing another of Abou–Ahmed's friends. Thereafter, there was little or no contact between the respondent and Ahmed with regard to the labor certification process. The respondent did, however, counsel Ahmed for his manic depression.

When Abou–Bakr inquired about the expedited process, the respondent agreed to pursue it for an additional $500 fee. Although the additional $500 was purportedly necessary for required advertising, the respondent failed to advise either Ahmed or Abou–Bakr that the additional cost would be used for that purpose. Further, he did not apprise them as to the disposition of the $ 2000 he had already received. Abou–Bakr did not agree to the additional fee and discharged the respondent, believing the $ 2000 was to be the only fee. He did not demand a refund of any of the fee paid, however. The labor certification was eventually obtained by Ahmed, but it would not have been had the respondent not filed for it when he did.

The hearing court concluded that the respondent violated each of the rule violations charged, with the exception of Rule 1.3.[14] With respect to Rule 1.4, the hearing court, found that, because there had been little contact between the respondent and Ahmed concerning the labor certification matter and, because the respondent failed to give adequate information to the clients concerning what was required to pursue the expedited labor certification process, it was "satisfied by clear and convincing evidence that Respondent violated [sections (a) and (b)], for failing to keep Abou–Bakr and Ahmed reasonably informed about the status of the matters undertaken, failing to comply with reasonable requests for information, and failure

---

**14.** As to Rule 1.3, noting the testimony that "but for Respondent's filing in a timely manner in April 2001, Ahmed would not have gotten a labor certification," the hearing court was not convinced that the respondent failed to act with reasonable diligence and promptness in the Ahmed matter.

to explain everything necessary to allow the client to make informed decisions regarding the representation."

The hearing court concluded that "there is clear and convincing evidence that Respondent violated MRPC 8.4(b) by engaging in the unauthorized practice of law in Maryland, and by doing so based on the facts, by clear and convincing evidence, violated MRPC 5.5(a) and BOP § 10–601, a misdemeanor under BOP § 10–606 that reflects on his trustworthiness, honesty, and fitness to practice law." In addition to the facts it found, the court's conclusions in this regard were supported by the following analysis:

"Respondent explained that he thought that he could practice law if he lived in Maryland, applied for the Maryland Bar, and had a Maryland Federal Bar License, and was licensed in another state, based on a case he read, but he could not remember the name of the case. After Dr. Benedek began treatment and medicated him,[15] Respon-

15. Dr. Robert Benedek was called by the respondent as an expert witness in the field of clinical pathology. Having reviewed the respondent's medical record back to 1997, he opined, to a reasonable degree of medical certainty, that: in 1997, the respondent was diagnosed by several "sources," presumably doctors, as suffering from post traumatic stress disorder, resulting from several days of brutal torture; in 1998, the respondent was diagnosed as having a learning disorder; and in 2002, the respondent was diagnosed as suffering from bi-polar disorder, with depression, for which he was prescribed medication. With respect to the bi-polar disorder, Dr. Benedek testified that it probably began when the respondent was in his late teens or early twenties. He added that people with the disorder usually have two sets of symptoms: intense, but not debilitating, depression and hypomania, *i.e.*, they are grandiose and highly goal directed, not very cautious and generous to their own detriment.

Dr. Benedek was aware of the respondent's testimony with regard to why he believed that he could practice law in Maryland even though he had not been admitted to the Bar. As noted by the hearing court, he offered that the respondent fixed on certain words in the case on which he said he relied and his hypomania "affected his judgment about reading and understanding the requirements, because of his desire to help people and the fact that his mother was in Maryland." Dr. Benedek also stated that he believed that, given the respondent's hypomania, the respondent did not do anything intentionally wrong and was functioning consistently with Maryland law. Notwithstanding his

dent could have researched the law and presented the case during the hearing. He did not, and he did not explain what, if anything, he did to attempt to locate the case. In addition, Respondent used different letterhead depending on the situation. He used his 'Law Offices' letterhead when dealing with client matters . . ., but used plain or 'personal' letterhead when dealing with the Board of Law Examiners. . . . This Court was not satisfied with the explanations that he gave concerning the different letterheads.

"Furthermore, Respondent tried to hide the existence of his law office and practice from the Board of Law Examiners. In part II (Character Questionnaire) of his Application for Admission to the Bar of Maryland (Petitioner's exhibit 3), he did not disclose that he had a law practice at 1600 South Hanover Street in question 13(b), at page 10 (employment history for the past five years). He put his last employment as attorney for the law office of Sharyn D'Urso in Connecticut. Also, he did not disclose in his letter to Robinson (Petitioner's exhibit 6) that he currently had a law office at 1600 South Hanover Street. He said he currently represented some indigent clients in U.S. District Court in Maryland, preceded by his job as an attorney in Connecticut.

"If Respondent was truthful when he said he honestly believed he was not doing anything improper, he would have disclosed his law practice to the Board of Law Examiners instead of hiding it. His argument that he was ignorant of the law simply is not credible. In his letter to Robinson on November 11, 2001 (Petitioner's exhibit 6), Respondent did not disclose his law practice at 1600 South Hanover Street. This is evidence to support the argument he was fully aware that a lawyer, not admitted to the Maryland Bar, may not practice or attempt to practice law in the State unless duly admitted. See BOP § 10–601. Respondent says he mailed in his outdated Application to the Bar, the Standard–97 form (Petitioner's exhibit 4) along with the actual Applica-

---

bi-polar disorder, Dr. Benedek opined that the respondent could effectively practice law, if properly medicated and treated.

tion for Admission to the Bar of Maryland (Petitioner's exhibits 2 and 3), in which he disclosed his law practice at 1600 South Hanover Street. However, the State Board of Law Examiners never received the outdated form, and I did not find his testimony regarding the general application credible. He apparently introduced it as an exhibit to show that in fact he did advise the Bar Examiners that he was practicing law at 1600 South Hanover Street even though that information was not disclosed elsewhere.

"There are more inconsistencies in Respondent's testimony. When this Court asked him if he had drafted any deeds in Maryland, he initially said no. Later, he testified that he did draft a deed for his mother in which she deeded the 1600 South Hanover Street property back to him, because he did not want to impose upon his friend to draft a second deed for the same property. After admitting that he certified drafting the deed as an attorney, he testified that he thought Federal law applied to land records. This testimony is not credible, because Respondent filed the deed in the land records in the Circuit Court for Baltimore City. In addition, Respondent knew the difference between State and Federal Court, because he stated that he represented indigent clients in matters in Federal Court and divorce cases in State Court, and filed divorces in the Circuit Court for Baltimore City.

"Finally, Respondent testified he knew by February 13, 2002 that he was no longer permitted to practice law in Maryland or use letterhead indicating he was authorized to practice law in Maryland, as shown by his letter to Ridgell (Petitioner's exhibit 11). However, the evidence presented shows he continued to use the letterhead after February 13, 2002 (his February 21, 2002 letter certifying he drafted the deed for the 1600 South Hanover Street property (attachment to Petitioner's exhibit 14)), and in his letter of April 5, 2002 to Ahmed (Petitioner's exhibit 1, attachment 3)."

Relying on *Attorney Grievance Comm'n v. Harris–Smith*, 356 Md. 72, 737 A.2d 567 (1999), the hearing court found by clear and convincing evidence that the respondent violated

Maryland Rule of Professional Conduct 7.1.[16]   In support, it observed that "[t]he Harris–Smith court held that an attorney has to specifically state that his or her practice is limited to the Maryland and D.C. Federal Courts in all cards, signs, telephone listings, letterhead, and the like, to avoid making false and misleading misrepresentations."

In concluding that the respondent violated Rule 8.4(c), the hearing court relied on *Attorney Grievance Comm'n v. Barneys*, 370 Md. 566, 805 A.2d 1040 (2002) and the following analysis:

"In this case, Respondent misrepresented that he was authorized to practice law in Maryland by omitting the jurisdictional limitations of his practice on business cards and letterhead.  He never told Abou–Bakr or Ahmed that he was not licensed to practice in Maryland.  He appeared before Master Pinderhughes on several occasions and neither disclosed to her that he was not licensed to practice law in Maryland nor that he represented both parties in divorce cases.  Respondent testified that he did not disclose either because no one asked, and he believed he could represent both parties if he disclosed any conflicts and each agreed.  However, no witnesses were called by him to support his claim.  As in *Barneys*, he does not deny he engaged in the unauthorized practice of law.  Further evidence of misrepresentation is Respondent's omission of his 1600 Hanover Street law practice in the Character Questionnaire section of his Application for Admission to the Bar of Maryland ... and in response to [member of the Character Committee Turhan] Robinson's letter...."

Finally, with regard to the final violation charged, Rule 8.4(d), the hearing court wrote:

"In this case, Respondent's conduct in total was prejudicial to the administration of justice.  He filed pleadings and

---

**16.**  As indicated, see footnote 11, *supra,* the hearing court also found violations of Rule 7.5(a) and § 10–602 of the Business Occupations and Professions Article, the petitioner's exceptions to which have been sustained.

represented both parties in divorce cases filed, without disclosing so, in the Circuit Courts for both Baltimore City and County, and he [represented] an individual in District Court. He testified that he did not disclose that he was licensed to practice law in Maryland, because no one asked. He appeared before Master Pinderhughes on several occasions without disclosing that he represented both parties in divorce cases, and he did not disclose to her that he was not licensed to practice law in Maryland. He knew enough to disclose conflicts to the parties, without being asked, from what he learned in Judge Fader's Family Law class. However, he did not disclose to his clients, to the general public, or to Master Pinderhughes that he was not licensed in Maryland. He was purposely deceitful and dishonest to the Character Committee. Finally, Respondent did not deny what he did was the unauthorized practice of law, but Respondent argues it was mitigated by his untreated bipolar condition. What Respondent did is prejudicial to the administration of justice, and this Court finds, by clear and convincing evidence, that Respondent violated Rule 8.4(d)."

The hearing court addressed, and rejected the respondent's argument in mitigation, that his conduct was precipitated by, and therefore account should be taken of, the bi-polar disorder from which he was suffering. In rejecting the respondent's mitigation argument, it reasoned:

"Mitigation

"In Respondent's Character Questionnaire in Part II of the Application for Admission to the Bar of Maryland, he certified that he read the Maryland Rules of Professional Conduct, and that he would devote the necessary time to acquainting himself with those standards and ideals (Petitioner's exhibit 3, question 18(a), page 12). The Application for Admission to the Bar of Maryland is signed under penalty of perjury. Also, Respondent testified he read the Maryland Rules of Professional Conduct. Ignorance of the Rules is no excuse for his misconduct. See *Attorney Grievance Commission of Maryland v. Stein,* 373 Md. 531, 819

A.2d 372 (2003). In that case, the Court of Appeals of Maryland held that an attorney has an obligation to know the ethics rules. *Id.* at 542, 819 A.2d 372.

"Respondent suggests that this Court should consider that his bi-polar II and post-traumatic stress disorders resulting from his torture in 1997 are mitigating factors. However, he discontinued treatment in 1998, and did not resume treatment until the Attorney Grievance Commission started disciplinary proceedings against him in 2002. Furthermore, on February 14, 2001, Respondent stated in his Character Questionnaire (Petitioner's exhibit 3, question 14(a)(i), page 11) that he did not have any condition or impairment that in any way currently affects or could affect his ability to practice law in a competent and professional manner. He was doing well in as early as 1999, shown by his ability to study for and successfully pass the New York Bar exam. Then he worked for an attorney in Connecticut. In December, 2000, he moved back to Maryland and began his practice of law, began studying for the Maryland Bar exam, and took the exam in July, 2001.

"The Court of Appeals of Maryland, in *Attorney Grievance Commission of Maryland v. Vanderlinde,* 364 Md. 376, 773 A.2d 463 (2001), discussed in what situations a mental disorder would be considered in a disciplinary action. In that case the attorney argued that her depression should be a mitigating factor in her disciplinary sanction. The court held that:

> '... when we are considering offenses relating to honesty ... there ... needs to be almost conclusive, and essentially uncontroverted evidence that would support a hearing judge's finding not only that the attorney had a serious and debilitating mental condition, but that the mental condition, in a sustained fashion, affected the ability of the attorney in normal day to day activities, such that the attorney was unable to accomplish the least of those activities in a normal fashion. Unless that standard is met the impairment is not "the root cause" of the misconduct.'

"Respondent appeared genuine and sincere in his desire to help people. Apparently Respondent's multiple mental and/or emotional disorders caused the good faith belief that he was authorized to practice law in Maryland without a license, but that is not mitigation in a legal sense. Therefore, as in *Vanderlinde*, Respondent's mental disorders were not the root cause of his impropriety, since he was able to function on a daily basis.

"This Court finds by clear and convincing evidence that Respondent's mental condition or impairment is not to be considered as a mitigating factor for his improprieties."

The respondent did not take any exceptions to the hearing courts's findings of fact or conclusions of law. As he did in the hearing court, however, the respondent argues that his conduct should be mitigated by the bi-polar disorder from which he suffers. Therefore, he urges the Court not to order his disbarment.

As we have seen, the petitioner recommends the respondent's disbarment. It points to the hearing court's findings, emphasizing that the respondent, by engaging in the unauthorized practice of law, engaged in conduct that was criminal, which, in turn, adversely reflected on his trustworthiness, honesty and fitness to practice law. Moreover, the petitioner notes that not only did the hearing court find a violation of Rule 8.4(c), which involves conduct characterized by dishonesty, fraud, deceit or misrepresentation and which, as the hearing court likewise determined by finding a violation of Rule 8.4(d), is prejudicial to the administration of justice, but it also found the respondent's testimony lacking in credibility. And, like the hearing court, which specifically so determined, the petitioner submits that the mental or emotional disorders from which the respondent suffered were not the root cause of the respondent's misconduct.

In *Vanderlinde*, supra, 364 Md. 376, 773 A.2d 463, this Court addressed yet again the seriousness of misappropriation and other forms of dishonest conduct and contemplated what, if anything, could or should mitigate that conduct. Having

reviewed a number of cases in which these issues were considered and noting the inconsistencies evident from their dispositions, we stated emphatically:

"[I]n cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as 'compelling extenuating circumstances,' anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the 'root cause' of the misconduct and that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC. Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of stealing, dishonesty, fraudulent conduct, the intentional misappropriation of funds or other serious criminal conduct, whether occurring in the practice of law, or otherwise."

*Id.* at 413–14, 773 A.2d at 485. We concluded:

"Upon reflection as a Court, in disciplinary matters, we will not in the future attempt to distinguish between degrees of intentional dishonesty based upon convictions, testimonials or other factors. Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character."

*Id.* at 418, 773 A.2d at 488.

To be sure, after *Vanderlinde,* we have continued to recognize, as we did before that decision, a distinction between intentional conduct, as in *Vanderlinde, see Attorney Grievance Comm'n v. Sullivan,* 369 Md. 650, 655–56, 801 A.2d 1077, 1080 (2002); *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 475, 800 A.2d 782, 789–90 (2002); *Attorney Grievance Comm'n v. Vlahos,* 369 Md. 183, 186, 798 A.2d 555, 556–57 (2002); *Attorney Grievance Comm'n v. Snyder,* 368 Md. 242, 276, 793

A.2d 515, 535 (2002); *Attorney Grievance Comm'n v. Bernstein,* 363 Md. 208, 226, 768 A.2d 607, 617 (2001); *Attorney Grievance Comm'n v. Tomaino,* 362 Md. 483, 499, 765 A.2d 653, 662 (2001), and negligent or unintentional conduct, *see e.g. Attorney Grievance Comm'n v. Santos,* 370 Md. 77, 88, 803 A.2d 505, 511 (2002); *Attorney Grievance Comm'n v. Hayes,* 367 Md. 504, 512–20, 789 A.2d 119, 124–29 (2002); *Attorney Grievance Comm'n v. Jeter,* 365 Md. 279, 289–94, 778 A.2d 390, 396–98 (2001).

A similar analysis was undertaken by this Court of the manner in which it has treated and sanctioned violations of the rules and statutes prohibiting the unauthorized practice of law. *See Atty. Grievance Comm'n v. Barneys,* 370 Md. 566, 805 A.2d 1040 (2002). There, after reviewing a number of the cases in which sanctions were imposed for the unauthorized practice of law, a divided Court discerned a trend in this Court favoring disbarment. *Id.* at 592, 805 A.2d at 1055. In support of that conclusion, it pointed out that in five of the six most recent cases, *see Attorney Grievance Comm'n v. Johnson,* 363 Md. 598, 770 A.2d 130 (2001); *Attorney Grievance Comm'n v. Briscoe,* 357 Md. 554, 745 A.2d 1037 (2000); *Attorney Grievance Comm'n v. Harper,* 356 Md. 53, 737 A.2d 557 (1999); *Attorney Grievance Comm'n v. James,* 355 Md. 465, 735 A.2d 1027 (1999); *Attorney Grievance Comm'n v. Kennedy,* 319 Md. 110, 570 A.2d 1243 (1990), the sanction imposed was disbarment, while in the other, *Attorney Grievance Comm'n v. Harris–Smith,* 356 Md. 72, 737 A.2d 567 (1999), the court imposed only a 30 day suspension. *Id.* at 579, 805 A.2d at 1047.

Rationalizing the decision to disbar Barneys, the Court identified three reasons distinguishing the cases resulting in disbarment from the one in which disbarment was not the sanction. It pointed out that in four of the six cases "deterrence" was identified as a significant objective in the sanction decision and in all of the cases resulting in disbarment, the unauthorized person actually represented clients in a Maryland court. *Id.* at 588–89, 805 A.2d at 1052–53. The second

difference was the existence or absence of a "federal overlay," *id.* at 589, 805 A.2d at 1053, a valid admission to the federal bar, and, thus, a right to practice in Maryland, if done consistent with that admission. The existence of the federal overlay negates any allegation of a deliberate and willful intent to violate the unauthorized practice Rule, where cases are brought only in federal court and no clients are represented in State court. The third difference, which is related to the second difference, involving a federal overlay, is whether the person attempted to adhere to the strictures of his or her authorization. *Id.* at 589–90, 805 A.2d at 1053. The Court also looked at whether the offending person cooperated with the petitioner. *Id.* In *Barneys,* it concluded that

> "The 'voluntary' nature of Respondent's act is tempered, however, as he closed his office only after his involvement in the Sanchez case was discovered and he was threatened with an injunction action. Had his misconduct not been discovered then, there is nothing in the record to suggest Barneys would not have continued or even expanded his illegal activities. In our view, it seems that Respondent, at best, cooperated with the investigation (to the extent he did) only when he had little real choice to do otherwise."

*Id.* (Footnote omitted).

Applying any one or all of the factors just enumerated, the respondent falls on the negative side of the ledger. A sanction of disbarment, using the logic of *Barneys,* would certainly serve the purpose of deterrence. Although there was a federal overlay in this case, the facts found indicate that it does not negate the respondent's wilful and intentional violation of the unauthorized practice rules. Indeed, the respondent was found to have begun his practice both in Maryland and in the federal court before he had been admitted by the federal court and that, even after admission to the federal court, he continued to practice in the State court without license to do so and without apprising prospective clients that he was restricted to practicing only in federal court. For the same reasons just stated, the respondent is not assisted by the third factor. The fourth factor does not

assist the respondent either. To the extent that he refrained from practicing in State court, he only did so after the fact of his unauthorized practice had come to light. But the respondent did not stop practicing right away. The hearing court determined that he continued to practice after February 13, 2002, when, according to his testimony, he knew he was not allowed to practice law in Maryland.

Nor is the respondent assisted by the distinction this Court has drawn between intentional dishonest conduct and negligently dishonest conduct. In this case, the respondent was found to have made misrepresentations, engaged in conduct characterized by dishonesty, fraud and deceit and even to have engaged in criminal conduct. Rather than characterize the respondent's conduct in a manner favorable to a mitigated sanction, the hearing court expressed itself strongly in stating its disbelief of the respondent's explanations and in characterizing them as non-forthcoming attempts to mislead.

We agree with the petitioner, under the facts and circumstances of this case, the proper sanction is disbarment.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MAHMOUD ALSAFTY.