967 A.2d 783

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Harold M. WALTER.

Misc. Docket AG No. 10, Sept. Term, 2007

Court of Appeals of Maryland.

March 18, 2009.

Dolores O. Ridgell, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for Petitioner.

Andrew Jay Graham, Kramon & Graham, Baltimore, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, RAKER, IRMA S., (Retired, Specially Assigned), and CATHELL, DALE R., (Retired, Specially Assigned), JJ.

MURPHY, J.

On June 5, 2007, the Attorney Grievance Commission of Maryland (the Commission) filed a Petition for Disciplinary or Remedial Action in which it asserted that Harold M. Walter, Respondent, violated Rule 8.4 of the Maryland Rules of Professional Conduct.[1] The Petition included the following assertions:

1. Respondent was admitted to the Maryland Bar on December 21, 1983. . . .

2. During times relevant to this matter, Respondent maintained an office of the practice of law in Baltimore City, Maryland, and was a partner in the law firm of Tydings and Rosenberg, hereafter "the firm."

\* \* \*

7. From 2003 through 2006, Respondent submitted requests for reimbursement for expenditures he had not actually made.

8. From 2003 through 2006, Respondent submitted requests for reimbursement for expenses in excess of the amounts he had actually incurred.

9. From 2003 through 2006, Respondent received funds from the firm to which he was not entitled and, on occasion, these false expenses were passed on to a client.

On June 26, 2007, this Court entered an Order in which "the Honorable Diane O. Leasure of the Fifth Judicial Circuit of Maryland . . . [was] designated to hear and determine this

---

1. This Rule, in pertinent part, provides:
 **Rule 8.4. Misconduct.**
 It is professional misconduct for a lawyer to:
 (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 (d) engage in conduct that is prejudicial to the administration of justice;

matter." During a December 18, 2007 evidentiary hearing, Bar Counsel narrowed the charges against Respondent to violations of Rules 8.4(c) and (d). At the conclusion of that hearing, it was agreed that the parties would submit Proposed Findings of Fact and Conclusions of Law. Following the receipt of those submissions, Judge Leasure filed **FINDINGS OF FACT AND PROPOSED CONCLUSIONS OF LAW** that included the following findings and conclusions:

The substance of the alleged misconduct is that Respondent submitted to his law firm, Tydings & Rosenberg LLP ("T & R"), certain "requests for reimbursement for expenditures he had not actually made," or "in excess of the amounts he had actually incurred" in connection with business travel for clients and out-of-state continuing legal education ("CLE") programs. Petitioner alleges, "on occasion, these false expenses were passed on to a client." In fact, however, as Respondent's testimony made clear, no client was ever asked to pay more than the actual reasonable cost of travel, lodging, and incidental expenses incurred by Respondent. Moreover, despite Petitioner's suggestion by the use of the phrase "on occasion," that multiple clients are involved in this matter, in fact there is only one client— Rubin Squared, Inc. which, through its principal Jacques Rubin, testified at trial that Respondent never incurred or charged for expenses that the client found unacceptable or inappropriate.

As to the CLE expenses, Respondent never asked for continuing legal education-related expenses to be paid by T & R in excess of the amounts to which he believed he was entitled pursuant to firm expense-payment policies.

Respondent's position is that he never attempted to deceive or defraud T & R, any client, or anyone else, and that he fully believed that he was entitled to the business expenses and CLE costs that he requested. It is Respondent's position that the dispute between Petitioner and Respondent is essentially one involving the proper interpretation of T & R's expense payment and reimbursement

policies and that the Maryland Rule[s] of Professional Conduct are not implicated.

Petitioner urges this Court to find that Respondent violated Maryland Rules of Professional Conduct 8.4(c) and (d). Respondent urges the Court to find that he did not violate either provision of this Rule, each of which involves issues of honesty, and largely turn on the lawyer's intent. In this case, the Court finds that Respondent did not intend to cheat, or deceive either his client or his firm.

\* \* \*

The sum that T & R contended Respondent had overcharged the firm for travel and hotel expenses and CLE is negligible in comparison to Respondent's financial contributions to T & R. Moreover, based on Respondent's testimony, the Court finds that it is likely that he incurred reimbursable business expenses on behalf of T & R and various clients for which he never sought or received firm reimbursement.

Respondent has never been disciplined by the Attorney Grievance Commission or sanctioned by any court. In fact, he has never been the subject of a complaint.

\* \* \*

The record does not reflect any errors on Respondent's part regarding the handling of business expenses from the time that he joined the firm in 1983 until 2005, despite the fact that during this 22 year period Respondent traveled frequently and the dollar volume of his business expenses submitted for payment either by T & R or clients in just the most recent four years was estimated to be in excess of $100,000.

The first alleged business expense issue cited by Petitioner occurred in 2005 when Respondent attended a Defense Research Institute ("DRI") CLE program in Los Angeles.

\* \* \*

The second issue before the Court involves two business trips that Respondent took to London to interview and depose witnesses for use in a substantial business dispute

arising out of the sale of a biological pharmaceutical manufacturing business, that was the subject of litigation Respondent was handling in New York City.

* * *

The Court does not find that either the client or T & R were financially damaged or that Respondent acted with improper intent. Petitioner failed to prove the contrary by clear and convincing evidence.

Mr. Rubin testified unequivocally that he saw nothing wrong with the expense payments that Respondent requested in connection with the two trips to London or, specifically, with the use of credit card points in lieu of currency. Mr. Rubin did not believe that the total cost of the tickets was too high, nor was any evidence adduced to that effect. While Mr. Rubin stated that he might have preferred to have been informed of the use of the credit card points in advance, this is so only because the failure to have this advance explanation "is now such an issue," *i.e.,* has resulted in his lawyer (who he testified he still retains to perform legal services) facing disciplinary action and Mr. Rubin traveling from Florida to Maryland to defend his lawyer. Mr. Rubin had no concern or complaint about not being told in advance and clearly did not believe that the use of the points instead of cash implicated any issue of honesty or trustworthiness on Respondent's part. Indeed, after being fully informed as a result of this case of what had occurred, Mr. Rubin testified that he continues to have the highest degree of confidence in Respondent and a strong belief in his honesty. Mr. Rubin testified that "[Respondent] is a very honest person ..." and also a "competent, diligent lawyer." There is no evidence that Respondent took advantage of his client or that his intentions were dishonest.

It should be noted that[,] as a result of T & R's investigation and Respondent's efforts to satisfy the firm's concerns, whether he believed they were legitimate or not, Respondent ultimately paid for the two London trips personally even though they were strictly for business purposes and

despite the fact that the client had always approved of Respondent incurring these costs on its behalf.

The third issue before the Court relates to Respondent's receipt of expense payments by T & R for his attendance at a DRI CLE program in Las Vegas, Nevada in 2006.

\* \* \*

While the Court finds that Respondent's method of documenting travel and hotel costs at the allowable levels was not explained to T & R's accounting and clerical department, and while an advance explanation of the method used would have been appropriate to avoid confusion or misunderstanding, the evidence does not convince the Court by clear and convincing evidence (a) that T & R was financially harmed, or (b) that Respondent intended to harm or defraud T & R.

\* \* \*

Petitioner failed to call any witnesses from DRI to challenge Respondent's testimony if Petitioner disagreed with anything Respondent stated in his deposition or at trial, or to provide DRI's explanation, if any, as to what happened respecting Respondent's credit card charge.

\* \* \*

Petitioner has charged Respondent with violations of Rule 8.4(c) and (d). In order to find by clear and convincing evidence a violation of either of these subsections of Rule 8.4, the Court would have to find "dishonesty, fraud, deceit or misrepresentation." The central element with respect to any such finding is the attorney's intent or state of mind.

Based on the entire record, as well as the specific events in question, and making its assessment as to the credibility of the witnesses, the Court does not find that Respondent acted with the intent to deceive or defraud any client or [Tydings & Rosenberg, Respondent's former law firm].

\* \* \*

### Conclusions of Law

This Court concludes that there have been no violations of Maryland Rule of Professional Conduct Rule 8.4.

The Commission now argues (in the words of its EXCEPTIONS AND RECOMMENDATION):

Judge Leasure based her finding that Rule 8.4(c) had not been violated on her belief that Respondent did not act with the intent to deceive or defraud any client or the firm. Specific intent, however, is not a necessary ingredient of dishonesty or misrepresentation. It is enough to find a violation of MRPC 8.4(c) that the attorney made a knowingly false statement, which is inherently dishonest. *Attorney Grievance Comm'n v. Siskind*, 401 Md. 41, 68–70, 930 A.2d 328, 344–345 (2007), *Attorney Grievance Comm'n v. Reinhardt*, 391 Md. 209, 892 A.2d 533 (2006).

In this case, the undisputed evidence established that Respondent engaged in conduct involving dishonesty and misrepresentation when he submitted "Request for Check" forms to his law firm that he knew contained false and misleading representations that he had incurred expenses which he had not, in fact, incurred.

\*　　\*　　\*

When Respondent submitted these false and misleading requests for reimbursement[,] he owed a fiduciary duty to his client and his firm. In this case, Respondent claimed reimbursement from his firm and his client for expenses he did not, in fact, incur. His bogus claims for reimbursement were made intentionally and in violation of MRPC 8.4(c) and Judge Leasure erred when she failed to credit Respondent's own words to his partners when he apologized for the *"breach of trust."* This same conduct would constitute conduct prejudicial to the administration of justice, a violation of MRPC 8.4(d).

(Emphasis in original) (footnotes and some citations omitted).

### Standard of Review

In *Attorney Grievance Comm'n v. Uguuonye*, 405 Md. 351, 952 A.2d 226 (2008), this Court stated:

"This Court has original and complete jurisdiction over attorney discipline proceedings" in Maryland. *Attorney Grievance Comm'n v. Adams,* 349 Md. 86, 93, 706 A.2d 1080, 1083 (1998). Even though conducting an independent review of the record, we accept the hearing judge's findings of fact unless they are found to be clearly erroneous. *Attorney Grievance Comm'n v. Zdravkovich,* 375 Md. 110, 126, 825 A.2d 418, 427, (2003). This Court gives deference to the hearing judge's assessment of the credibility of witnesses. *Id.* Factual findings by the hearing judge [that the Commission has satisfied its burden of persuasion] will not be interfered with if they are founded on clear and convincing evidence. *Attorney Grievance Comm'n v. Mon-fried,* 368 Md. 373, 388, 794 A.2d 92, 100 (2002). All proposed conclusions of law made by the hearing judge, however, are subject to *de novo* review by this Court. *Attorney Grievance Comm'n v. O'Toole,* 379 Md. 595, 604, 843 A.2d 50, 55 (2004).

*Id.* at 368, 952 A.2d at 235–36.

### Discussion

 Although the Commission's evidence was sufficient as a matter of law to generate the issue of whether Respondent had violated Rule 8.4, in its assessment of the credibility of witnesses, the hearing judge was entitled to accept-or reject-*all, part,* or *none* of the testimony of any witness, including testimony that was not contradicted by any other witness. In making the finding of fact "that Respondent did not intend to cheat or deceive either his client or his firm," the hearing judge was entitled to draw reasonable inferences from the facts that the judge found to be true. "There are few facts, including even ultimate facts, that cannot be established by inference." *Moore v. State,* 73 Md.App. 36, 45, 533 A.2d 1, 5 (1987).

There is nothing mysterious about the use of inferences in the fact-finding process. Jurors routinely apply their common sense, powers of logic, and accumulated experiences in life to arrive at conclusions from demonstrated sets of facts.

*Robinson v. State,* 315 Md. 309, 318, 554 A.2d 395, 399 (1989). Hearing judges do the very same thing.

■ The hearing judge's finding "that Respondent did not intend to cheat or deceive either his client or his firm" was not erroneous-clearly or otherwise-merely because she did not find it appropriate to draw one or more "permissible inferences which might have been drawn from the evidence by another trier of the facts." *Hous. Opportunities Comm'n of Montgomery County v. Lacey,* 322 Md. 56, 61, 585 A.2d 219, 222 (1991). In *Figgins v. Cochrane,* 174 Md.App. 1, 920 A.2d 572 (2007), the Court of Special Appeals provided the following explanation for its conclusion that the Circuit Court was not clearly erroneous in finding that the appellant's evidence failed to rebut the presumption that she had improperly benefitted from her confidential relationship with her deceased father:

> The finding of [the Circuit Court] that there was a confidential relationship is unassailable. That relationship created, as a matter of law, the presumption that any largesse exercised by the Father toward the appellant-be it by deed of property or by gift from an equity loan-was improperly induced by the relationship, whatever the modality of the transfer might turn out to be. The burden was cast upon the appellant to rebut that invalidating presumption. [The Circuit Court] found that in no manner has [appellant] met that burden. [The Circuit Court] was simply not persuaded, and there was evidence to support that non-persuasion. That there might also have been some evidence in the case pointing in the other direction is beside the point. It was clearly a question of fact for the fact finder. [The Circuit Court's] conclusion in that regard cannot, therefore, be said to have been clearly erroneous.

*Id.* at 14–15, 920 A.2d at 580. This Court quoted that analysis with approval in *Figgins v. Cochrane,* 403 Md. 392, 406, 942 A.2d 736, 744 (2008), while concluding "as did the Court of Special Appeals, that the trial court's finding that [Petitioner] had not met her burden to prove the validity of the transfer, was not clearly erroneous." *Id.* at 414, 942 A.2d at 749. As

the Court of Special Appeals noted in *Bricker v. Warch,* 152 Md.App. 119, 831 A.2d 453 (2003):

> Although it is not uncommon for a fact-finding judge to be clearly erroneous when he [or she] is affirmatively **PERSUADED** of something, it is, as in this case, almost impossible for a judge to be clearly erroneous when he [or she] is simply **NOT PERSUADED** of something.

*Id.* at 137, 831 A.2d at 464 (emphasis in original).

As to Respondent's alleged admission of wrongdoing, one of his former partners testified that, during an August 29, 2006 meeting of the firm, Respondent said "that he took full responsibility for this, and that he apologized for the breach of trust." Respondent's direct examination concluded as follows:

> [T]here is no question in my mind that the manner in which I presented the reimbursement requests left something to be desired ... and, I certainly regret not being clearer about that. I also regret not having talked to Mr. Rubin, for instance before using the frequent flyer miles, because ... he has indicated that he would have approved it, without any problem, and he approved it subsequently.
>
> \* \* \*
>
> It never occurred to me that it wouldn't be okay with him, that I used frequent flyer points, so long as what I charged him was the fair market value of the ticket. But I do regret not having put that out on the table.

The 251 page hearing transcript includes 15 pages of Respondent's cross-examination. At no point during his cross-examination was Respondent questioned about his alleged admission. From our review of the entire record, we reject the argument that Respondent "admitted" to his partners that he had knowingly submitted (in the words of the Commission) "bogus claims for reimbursement ... in violation of MRPC 8.4(c)." We therefore overrule the Commission's exceptions to the factual findings of the hearing judge.

 As to the Commission's exceptions to the hearing judge's conclusion of law, which is subject to *de novo* review,

neither *Siskind, supra,* nor *Reinhardt, supra,* supports the argument that Rule 8.4(c) is violated whenever a lawyer asks for reimbursement of expenses in an amount that exceeds the amount to which the lawyer is actually entitled, *even if* the lawyer's request was based upon an honest belief that he or she was entitled to the entire amount of reimbursement requested. In each of those cases, the attorney made a false statement that he knew to be false. In the case at bar, the hearing judge found that the Commission failed to prove by clear and convincing evidence that Respondent *knew* that he was not entitled to the amount of reimbursement that he requested. This non-clearly erroneous finding was consistent with the abundant evidence presented in support of Respondent's contention "that he never attempted to deceive or defraud T & R, any client, or anyone else, and that he fully believed that he was entitled to the business expenses and CLE costs that he requested."

Because we accept the hearing judge's conclusion that a violation of Rule 8.4(c) was not proven by clear and convincing evidence, and because the charge that Respondent violated Rule 8.4(d) is based solely upon the premise that he violated Rule 8.4(c), we therefore overrule the Commission's exceptions to the hearing judge's conclusion "that there have been no violations of Maryland Rule of Professional Conduct Rule 8.4," and dismiss the Commission's Petition.

**PETITION FOR DISCIPLINARY ACTION AGAINST HAROLD M. WALTER, ESQ. DISMISSED; COSTS TO BE PAID BY THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND.**