26 A.3d 967

# ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## Joseph TAUBER.

**Misc. Docket AG No. 9, Sept. Term, 2010.**

Court of Appeals of Maryland.

Aug. 18, 2011.

Fletcher P. Thompson, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Joseph Tauber, Ellicott City, MD, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

MURPHY, J.

On February 26, 2010, the Attorney Grievance Commission of Maryland, Petitioner, filed a PETITION FOR DISCIPLINARY OR REMEDIAL ACTION against Joseph Tauber, Respondent. On March 4, 2010, this Court ordered that the charges against Respondent "be heard and determined by Judge Dennis M. Sweeney, of the Fifth Judicial Circuit [the Hearing Judge], in accordance with Maryland Rule 16–757[.]" The Hearing Judge filed "FINDINGS OF FACT AND CONCLUSIONS OF LAW" in which he concluded that Respondent "violated Rules 1.15(a) and 8.4(d) of the Maryland Rules of Professional Conduct [ (MRPC) ], [Maryland] Rule 16–604, Md. Bus. Occ. & Prof.Code Ann., Sec. 10–304 and 10–306." Petitioner (in the words of the EXCEPTIONS it filed in this Court) "takes exceptions to the failure of the trial court to find that respondent violated Maryland Rule of Professional Conduct 8.4(c) and Maryland Rule 16–609[.]" For the reasons that follow, we shall overrule Petitioner's exceptions, and

impose a thirty day suspension for the violations that were proven by clear and convincing evidence.

## Background

The Hearing Judge's FINDINGS OF FACT AND CONCLUSIONS OF LAW included the following findings and conclusions:

22. On November 12, 2007, the date that Jill Lee retained Mr. Tauber to represent her in the divorce, she through her father paid respondent $3,500.00 as a retainer against which Mr. Tauber was to bill $245.00 per hour.

23. On that date, Mr. Tauber did not have a trust account for the purpose of receiving such funds.

24. Mr. Tauber deposited the funds into his operating account and thereafter drew against the funds after he deposited them.

25. Mr. Tauber prepared the divorce action and filed it on June 17, 2008.

26. On June 20, 2008, Ms. Lee, again through her parents, paid Mr. Tauber an additional $2,500.00 against which he was to bill at $245.00 per hour.

27. Mr. Tauber also deposited these funds into an operating account and drew on them.

28. Sometime at the end of June 2008, Mr. Tauber prepared a bill for Ms. Lee and sent it to her. The bill indicated that he had worked 19.4 hours on her case, earning a total of $4,753.00. The bill also showed that Mr. Tauber had paid a filing fee of $115.00.

29. On July 29, 2009, after becoming dissatisfied with Mr. Tauber's representation and after filing a complaint about Mr. Tauber with the Commission, Ms. Lee sent Mr. Tauber a letter dismissing him as her attorney and requesting the return of the unused retainer which she calculated as $1,247.00

30. On September 11, 2009, Mr. Tauber refunded Ms. Lee the $1,247.00 balance of the retainer.

\* \* \*

34. Mr. Tauber admitted that Bar Counsel "was correct in terms of the non-deposit into the trust account." ... but explained "because whether it's ignorance on my part or basically my practice prior to the incident was not knowing the need for that."

35. Mr. Tauber stated that he "did have some difficulty I guess in terms of the trust account, and I've readily admitted that. I've readily admitted that to Mr. Hirschman, and part of it was based, Your Honor, in terms of what sort of law I engaged in."

36. Mr. Tauber explained that his usual legal work doing insurance defense work, work for the Office of the Public Defender and in Child in Need of Assistance matters meant that he never was paid money "up front" and that he always billed after the fees were earned and was paid after the billing.

37. Afer Mr. Tauber had a discussion with Mr. Hirschman about the need for such an account[,] he set one up, but has not utilized it since he has "given up practicing law and have [sic] moved to the state of Delaware.

\* \* \*

*Conclusions of Law*

By placing the retainer fees in his operating account rather than a trust account and drawing on the funds prior to earning them, the clear and convincing evidence establishes that Mr. Tauber violated Rules 1.15(a) and 8.4(d) of the Maryland Rules of Professional Conduct, Rule 16–604, and Md. Bus. Occ. & Prof.Code Ann., Sec. 10–304 and 10–306.

It is undisputed that Mr. Tauber deposited the initial advance fee payment of $3,500.00 in his operating account after he received it on November 12, 2007. The reason he deposited it in his operating account was that he did not

have a trust account at the time and he apparently was not aware of the need to deposit the funds in a trust account.

 \* \* \*

In the Commission's Proposed Findings of Fact and Conclusions of Law, it asserts that the conduct here is "dishonest conduct" under 8.4(c). . . . In the context of this case, however, the court does not conclude that Mr. Tauber was engaged in conduct that was "dishonest" conduct as 8.4(c) specifies. It is clear that Mr. Tauber was wrong not to have placed the funds in an escrow account and that he should have known of the need to do so. Mr. Tauber had admitted that he did not handle the funds as they should have been handled and as the court reads his testimony and filings with the court he has conceded his error.

However, the court cannot conclude by clear and convincing evidence that Mr. Tauber acted with the intent to be "dishonest" as is alleged by the Commission. The court concludes that at the times he received the funds, he believed that he was handling the funds received in an appropriate [manner] and that his failure to place the funds in a trust account was not done with any intent to be dishonest in his dealings with Ms. Lee, the client in the case. There is no indication in this record that Mr. Tauber had any intent to be dishonest or fraudulent in his dealings with Ms. Lee or her parents or that he engaged in deceit or misrepresentation. The court therefore does not conclude by clear and convincing evidence that Mr. Tauber has violated 8.4(c).

On the other hand, the court does find by clear and convincing evidence that Mr. Tauber has engaged in conduct that is "prejudicial to the administration of justice" by failing to know about and have in place a system that would protect his client's funds until they could either be earned or returned to the client. It was incumbent upon him as a lawyer to know the proper procedures to follow in dealing with new clients and his failure to know the requirements for properly handling client's funds entrusted to him as a retainer does not excuse him from a finding that his actions

or omissions were prejudicial to the administration of justice. The court therefore concludes by clear and convincing evidence that he violated 8.4(d).

Other than the violations found above, the court cannot conclude that there is clear and convincing evidence of any other violation of the provisions cited in the Petition for Disciplinary or Remedial Action filed in the action before the Court of Appeals. As noted above, the Commission has abandoned all allegations except those pertaining to the handling of the funds Mr. Tauber received.

## Discussion

### I. Petitioner's MRPC 8.4(c) Exception

The mishandling of a retainer fee may or may not constitute "dishonest" conduct proscribed by MRPC 8.4(c). While it is obvious that MRPC 8.4(c) is violated when a lawyer deliberately places into the lawyer's operating account funds that the lawyer has a duty to place into an escrow account, that rule is not violated when a lawyer *mistakenly* places into the operating account funds that should have been placed into an escrow account. In the case at bar, Respondent testified that (1) he placed the retainer into his operating account out of the mistaken belief that he was entitled to do so, and (2) opened an escrow account as soon as he realized that he was required to have an escrow account. The Hearing Judge was entitled to accept Respondent's explanation.

In *Attorney Grievance Comm'n v. Uguuonye,* 405 Md. 351, 952 A.2d 226 (2008), this Court stated:

"This Court has original and complete jurisdiction over attorney discipline proceedings" in Maryland. *Attorney Grievance Comm'n v. Adams,* 349 Md. 86, 93, 706 A.2d 1080, 1083 (1998). Even though conducting an independent review of the record, we accept the hearing judge's findings of fact unless they are found to be clearly erroneous. *Attorney Grievance Comm'n v. Zdravkovich,* 375 Md. 110, 126, 825 A.2d 418, 427 (2003). This Court gives deference to the hearing judge's assessment of the credibility of wit-

nesses. *Id.* Factual findings by the hearing judge [that the Commission has satisfied its burden of persuasion] will not be interfered with if they are founded on clear and convincing evidence. *Attorney Grievance Comm'n v. Monfried,* 368 Md. 373, 388, 794 A.2d 92, 100 (2002). All proposed conclusions of law made by the hearing judge, however, are subject to *de novo* review by this Court. *Attorney Grievance Comm'n v. O'Toole,* 379 Md. 595, 604, 843 A.2d 50, 55 (2004).

*Id.* at 368, 952 A.2d at 235–36.

In *Attorney Grievance Commission v. Walter,* 407 Md. 670, 967 A.2d 783 (2009), while overruling the petitioner's exception to the hearing judge's finding that the respondent had not violated MRPC 8.4, this Court stated:

Although the Commission's evidence was sufficient as a matter of law to generate the issue of whether Respondent had violated Rule 8.4, in its assessment of the credibility of witnesses, the hearing judge was entitled to accept—or reject—*all, part,* or *none* of the testimony of any witness, including testimony that was not contradicted by any other witness. In making the finding of fact "that Respondent did not intend to cheat or deceive either his client or his firm," the hearing judge was entitled to draw reasonable inferences from the facts that the judge found to be true.

 \* \* \*

There is nothing mysterious about the use of inferences in the fact-finding process. Jurors routinely apply their common sense, powers of logic, and accumulated experiences in life to arrive at conclusions from demonstrated sets of facts.

*Robinson v. State,* 315 Md. 309, 318, 554 A.2d 395, 399 (1989). Hearing judges do the very same thing.

The hearing judge's finding "that Respondent did not intend to cheat or deceive either his client or his firm" was not erroneous—clearly or otherwise—merely because she did not find it appropriate to draw one or more "permissible inferences which might have been drawn from the evidence

by another trier of the facts." *Hous. Opportunities Comm'n of Montgomery County v. Lacey,* 322 Md. 56, 61, 585 A.2d 219, 222 (1991).

*Id.* at 678–79, 967 A.2d at 788.

As was the situation in *Walter,* the Petitioner's evidence in the case at bar was sufficient to generate the issue of whether Respondent's handling of the retainer fee constituted "dishonest" conduct under MRPC 8.4(c). The Hearing Judge, however, found "no indication . . . that [Respondent] had any intent to be dishonest or fraudulent in his dealings with Ms. Lee or her parents or that he engaged in deceit or misrepresentation." This Court shall give deference to that finding, which is based upon the Hearing Judge's assessment of Respondent's credibility, and shall therefore overrule Petitioner's exception to the Hearing Judge's failure to find that Respondent violated MRPC 8.4(c).

## II. Petitioner's Md. Rule 16–609 Exception

Maryland Rule 16–609(a), in pertinent part, provides that "[a]n attorney . . . may not . . . use any funds [required by the Maryland Rules to be deposited in an attorney trust account] for any unauthorized purpose." This rule is not violated whenever an attorney deposits into an operating account funds that are required by Md. Rule 16–604 to be deposited in an attorney trust account.[1] It is clear that Respondent (1) deposited into his operating account the funds paid to him on behalf of Ms. Lee, and thereafter (2) "drew against" funds in that account. Petitioner, however, did not produce evidence that any of the funds that Respondent "drew against" necessarily included the funds paid on behalf of Ms Lee. Under these circumstances, no reasonable trier of fact could find by clear and convincing evidence that Respondent actually made any unauthorized use of the funds paid on

---

**1.** Md. Rule 16–303, which took effect on January 1, 1997, requires members of the Maryland Bar to "maintain one or more attorney trust accounts for the deposit of funds received from any source for the intended benefit of clients or third persons."

behalf of Ms. Lee. We shall therefore overrule Petitioner's exception to the Hearing Judge's failure to find that Respondent violated Md. Rule 16–609.

### III. Respondent's Sanction

 Although the cases in which this Court has imposed sanctions on attorneys who have committed misconduct are perhaps not yet "as numerous as the sands of the sea," there are three reasons why many of those cases cannot be easily reconciled.[2] First, as this Court has repeatedly stated, "each attorney grievance case rests on its own merits." *Attorney Grievance Comm'n v. Garcia,* 410 Md. 507, 529, 979 A.2d 146, 159 (2009). Second, "the purpose of attorney disciplinary proceedings is not to punish the erring attorney, only to protect the clients whom attorneys serve." *Attorney Grievance Comm'n v. Elmendorf,* 404 Md. 353, 363, 946 A.2d 542, 548 (2008). Third, as this Court stated in *Attorney Grievance Comm'n v. Taylor,* 405 Md. 697, 955 A.2d 755 (2008):

> The public is best protected when sanctions are imposed commensurate with the nature and the gravity of the misconduct and the intent with which it was committed. *Attorney Grievance Comm'n v. Reinhardt,* 391 Md. 209, 223, 892 A.2d 533, 541 (2006).

> The severity of the sanction depends upon the facts and circumstances of the case, taking account of any particular aggravating or mitigating factors. *Attorney Griev. Comm. v. Glenn,* 341 Md. 448, 484, 671 A.2d 463, 480 (1996). In determining the appropriate sanction, we have often looked to the American Bar Association's *Standards for Imposing Lawyer Sanctions,* reprinted in LAWYERS' MANUAL ON

---

**2.** Nearly sixty years ago, Dean McCormick declared that cases dealing with the admissibility of "other crimes evidence" are "as numerous as the sands of the sea." McCormick, *Evidence,* 1954, p. 307 n. 2. In Judge Weinstein's Evidence treatise, he comments that "the question of when evidence of a particular criminal act may be admitted is so perplexing that the cases sometimes seem as numerous 'as the sands of the sea' and often cannot be reconciled." 2 Weinstein's Evidence, P 404(08), p. 404–40 (1978).

PROFESSIONAL CONDUCT (2003) (*ABA Standards*). *Id.* at 488, 671 A.2d at 483. These standards create an organizational framework that calls for a consideration of four questions: (1) What is the nature of the ethical duty violated?; (2) What was the lawyer's mental state?; (3) What was the extent of the actual or potential injury caused by the lawyer's misconduct?; and (4) Are there any aggravating or mitigating circumstances? *See ABA Standards,* Standard 3.0, at 17. Also relevant are the following ["mitigating"] factors:

> "Absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses."

*Id.* at 488–89, 671 A.2d at 483 (quoting ABA Standards, Standard 9.32, at 41–42).

*Id.* at 720–21, 955 A.2d at 768–69.

As to what constitutes an "aggravating factor," in *Attorney Grievance Comm'n v. Bleecker,* 414 Md. 147, 994 A.2d 928 (2010), this Court stated:

> In determining the appropriate sanction, we often look to the aggravating factors found in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions. These include:
>
> (a) prior disciplinary offenses;
>
> (b) dishonest or selfish motive;
>
> (c) a pattern of misconduct;
>
> (d) multiple offenses;
>
> (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

*Id.* at 176–77, 994 A.2d at 945–46.

■■■ The question of whether a lawyer's misconduct was intentional or negligent is obviously of significant consequence to the issue of what the appropriate sanction should be. In *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 697 A.2d 446 (1997), while determining the appropriate sanction for the "respondent's total ineptness concerning the handling of the business aspects of his practice," this Court stated:

> To be sure, every lawyer is deemed to know the Rules of Professional Conduct, and is charged with the knowledge that along with the duty to maintain adequate records, an attorney must maintain a separate trust account with a title that includes the name of the attorney or law firm and that clearly designates the account as "Attorney Trust Account" or the equivalent. Rule BU6. Claimed ignorance of ethical duties and bookkeeping requirements is not a defense in disciplinary proceedings. Although ignorance does not excuse a violation of disciplinary rules, a finding with respect to the intent with which a violation was committed is relevant on the issue of the appropriate sanction. This is consistent with the purpose of a disciplinary proceeding: to protect the public, as well as to promote general and specific deterrence. *Attorney Griev. Comm'n v. Sliffman,* 330 Md. 515, 529, 625 A.2d 314, 321 (1993); *Attorney Griev. Comm'n v. Berger,* 326 Md. 129, 131, 604 A.2d 58 (1992) *(citing Attorney Griev. Comm'n v. Owrutsky,* 322 Md. 334, 355, 587 A.2d 511, 521 (1991)).

*Id.* at 435, 697 A.2d at 454.

As to cases involving a lawyer's "intentional dishonesty," however, in *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 773 A.2d 463 (2001), this Court stated:

Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.

Disbarment ordinarily should be the sanction for intentional dishonest conduct.

\* \* \*

The mere fact that an attorney steals or commits other serious criminal conduct, coupled only with evidence of mental impairment, whether arising out of alcoholism or out of other factors, that does not arise to the level of ["a serious and debilitating mental condition . . . that . . . in a sustained fashion, affected the ability of the attorney in normal day to day activities, such that the attorney was unable to accomplish the least of those activities in a normal fashion"], generally will not be sufficient to establish that degree of mental incompetency that warrants a lesser sanction than the sanction that is otherwise appropriate for such misconduct involving stealing, intentional misappropriation of the funds of another, and the like, or other serious criminal conduct.

*Id.* at 418–19, 773 A.2d at 488.

In *Attorney Grievance Comm'n v. Alsafty*, 379 Md. 1, 838 A.2d 1213 (2003), this Court stated:

To be sure, after *Vanderlinde*, we have continued to recognize, as we did before that decision, a distinction between intentional conduct, as in *Vanderlinde, see Attorney Grievance Comm'n v. Sullivan*, 369 Md. 650, 655–56, 801 A.2d 1077, 1080 (2002); *Attorney Grievance Comm'n v. Powell*, 369 Md. 462, 475, 800 A.2d 782, 789–90 (2002); *Attorney Grievance Comm'n v. Vlahos*, 369 Md. 183, 186, 798 A.2d 555, 556–57 (2002); *Attorney Grievance Comm'n v. Snyder*, 368 Md. 242, 276, 793 A.2d 515, 535 (2002); *Attorney Grievance Comm'n v. Bernstein*, 363 Md. 208, 226, 768 A.2d 607, 617 (2001); *Attorney Grievance Comm'n v. To-*

*maino,* 362 Md. 483, 499, 765 A.2d 653, 662 (2001), and negligent or unintentional conduct, *see e.g. Attorney Grievance Comm'n v. Santos,* 370 Md. 77, 88, 803 A.2d 505, 511 (2002); *Attorney Grievance Comm'n v. Hayes,* 367 Md. 504, 512–20, 789 A.2d 119, 124–29 (2002); *Attorney Grievance Comm'n v. Jeter,* 365 Md. 279, 289–94, 778 A.2d 390, 396–98 (2001).

*Id.* at 17–18, 838 A.2d at 1223.

 As is clear from a review of the Hearing Judge's findings of fact and conclusions of law, Respondent did not engage in "intentional dishonest conduct." To determine the appropriate sanction for the Respondent's violations, we consider (1) the nature of the violations, (2) Respondent's mental state, (3) the extent of the actual and/or potential injury caused by the violations, and (4) any aggravating and/or mitigating circumstances. *Taylor, supra,* 405 Md. at 720, 955 A.2d at 768.

 In the words of the Hearing Judge, Respondent violated MRPC 8.4(d) "by failing to know about . . . and have in place a system that would protect his client's funds until they could either be earned or returned to the client." While we agree with the Hearing Judge that "[i]t was incumbent upon [Respondent] as a lawyer to know . . . the requirements for properly handling client's funds entrusted to him as a retainer," we accept the Hearing Judge's factual finding that Respondent mistakenly "believed that he was handling the funds received in an appropriate [manner] and that his failure to place the funds in a trust account was not done with any intent to be dishonest[.]" We also agree with the Hearing Judge that, although no client suffered any injury, the case at bar is one in which there was a potential for injury. We must also consider the following mitigating factors: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) timely good faith efforts to rectify consequences of misconduct; (4) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (5) inexperience in the practice of law; and (6) remorse.

In "unintentional misappropriation" cases, this Court has imposed indefinite suspensions, "with the right to reapply" after a period of time. In *Attorney Grievance Comm'n v. Zuckerman*, 386 Md. 341, 872 A.2d 693 (2005), that period of time was thirty days. *Id.* at 379, 872 A.2d at 716. In *Attorney Grievance Comm'n v. Sperling*, 380 Md. 180, 844 A.2d 397 (2004), that period of time was ninety days. *Id.* at 185, 844 A.2d at 400. As the case at bar does not involve misappropriation, we conclude that an indefinite suspension— even with the right to reapply within a short period of time— is too harsh a sanction. We also conclude, however, that a reprimand would be an inadequate sanction.

The public will be protected by the imposition of a sanction that emphasizes the importance of *strict compliance* with the statutes and the Rules of Professional Conduct that pertain to the handling of client funds. Under the facts and circumstances of the case at bar, the appropriate sanction is a thirty day suspension, to begin thirty days from the date on which this opinion is filed.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JOSEPH TAUBER.**

HARRELL and BATTAGLIA, JJ., concur and dissent.

HARRELL, J., concurring and dissenting, in which BATTAGLIA, J., joins.

I concur with the Majority opinion as to the disposition of the exceptions of the Attorney Grievance Commission ("AGC").[1] I write in dissent, however, because the gravity of

---

1. The AGC takes exception to the hearing judge's failure to conclude that there was a violation of Maryland Rule 16–609, which states that "[a]n attorney ... may not ... use any funds for any unauthorized

the violations found and the principle of stare decisis necessitate a more serious sanction than ordered by the Majority opinion. We made clear, in *Attorney Grievance Commission v. Calhoun*, 391 Md. 532, 574, 894 A.2d 518, 543 (2006), that "[t]his Court does not take the mishandling of attorney trust accounts lightly." Yet, the flat thirty-day suspension imposed by the Majority opinion undercuts this proclamation and the substantial line of factually-similar cases honoring it.

## I.

As stated in *Calhoun*, 391 Md. at 574–75, 894 A.2d at 543–44:

> We cannot understate the importance of holding funds in escrow in accordance with Rule 1.15 and how the Rule reinforces the public's confidence in our legal system. Escrow accounts serve as sanctuary for client funds from the attorney's creditors. They also provide peace of mind and order to disputing parties, assuring that no one party will exercise control over the funds until an independent resolution of the dispute.

*　　*　　*

> A number of other cases have found *indefinite* suspension of varying degrees to be the proper sanction where there was no finding of intentional misappropriation. *See [Attorney Grievance Comm'n v.] Sperling*, 380 Md. 180, 844 A.2d 397, 404 [ (2004) ] (finding violations of [the Maryland Rules of Professional Conduct ("MRPC") ] 1.15 and 8.4(a); indefinite suspension with right to reapply after ninety (90) days); ... *[Attorney Grievance Comm'n v.] Culver*, 371 Md. 265, 808 A.2d 1251 [ (2002) ] (finding violations of MRPC 1.5(c), 1.15(c) and [Maryland] Rule 16–607(b)(2); indefinite suspen-

---

purpose." To sustain the exception, we would need to conclude that Tauber not only deposited client funds into his operating account, but then used those client funds for some unauthorized purpose. In this case, there appears to be scant evidence—i.e., checks, bank statements, and the like—demonstrating clearly that Tauber (1) used actually client funds, as opposed to already existing funds to which he was entitled, in his operating account (2) for an unauthorized purpose.

sion with right to reapply after thirty (30) days); [*Attorney Grievance Comm'n v.*] *DiCicco*, 369 Md. 662, 802 A.2d 1014 [ (2002) ] (finding violations of MRPC 1.15(a), (c), 8.4(a), Rules 16–607(a) and 16–609; indefinite suspension with right to reapply after ninety (90) days); [*Attorney Grievance Comm'n v.*] *Jeter*, 365 Md. 279, 778 A.2d 390 [ (2001) ] (finding violations of MRPC 1.5, 1.15, and Maryland Rules 16–603 and 16–604; indefinite suspension with right to reapply after six months)[.]

(Emphasis added; internal quotation marks and citations omitted.)

In addition to this line of cases, the Court often cites *Attorney Grievance Commission v. Awuah*, 346 Md. 420, 697 A.2d 446 (1997) (imposing an indefinite suspension with a right to reapply in 60 days for violations of MRPC 1.15(a) and (b), 8.4(b), Maryland Code (1996), Business Occupations & Professions, § 10–302,[2] and the predecessors of Rules 16–603, 16–604, 16–606, 16–607, and 16–609, which all pertain to not maintaining a client trust account and depositing funds in an operating account), as well as "[*Attorney Grievance Commission v.*] *Seiden*, 373 Md. [409,] 425, 818 A.2d [1108,] 1117 (imposing a thirty-day suspension with the right to reapply for violations of MRPC 1.1, 1.15(a), 8.4(a), and 8.4(d) because the attorney improperly obtained his fee from his escrow account after depositing settlement funds, but was remorseful, had no previous disciplinary action against him, and the conduct resulted from representing a difficult client)[.]" *Attorney Grievance Commission v. Zuckerman*, 386 Md. 341, 377, 872 A.2d 693, 714 (2005).

In all of these cases, the attorneys were playing "fast and loose" with their clients' funds, whether creating a shortfall in a client trust account, *Sperling*; drawing on a disputed portion of a client trust fund, *Culver*; using a client trust account as a personal bank account, *DiCicco*; failing to maintain a client trust account and instead placing client funds into an operat-

---

2. Unless otherwise indicated, all Code references are to the Business Occupations and Professions Article.

ing account, *Jeter* and *Awuah;* or deducting a fee before paying the client or submitting a fee petition in an estate case, *Seiden.* In some, *but not all,* of these cases, the attorneys used the funds for their own, unauthorized purposes, i.e., misappropriated the funds.[3, 4] The reason we cite these cases together normally, it seems to me, is because they share the primary factor militating against disbarment—the misconduct was unintentional or negligent. *See e.g., Culver,* 371 Md. at 280–81, 808 A.2d at 1260 ("That the effect of the [attorney's] action may be to misappropriate funds belonging to another ... does not mean that the actions were taken with the intent to misappropriate." (internal quotation marks and citations omitted)).

## II.

In the present case, the hearing judge determined that Joseph Tauber ("Tauber"), by depositing unearned client

---

**3.** As we stated in *Attorney Grievance Commission v. Culver,* 371 Md. 265, 281 n. 19, 808 A.2d 1251, 1260 n. 19 (2002):

The co-mingling of client and attorney funds always creates the potential for misappropriation, even when there is no intent to misappropriate. A misappropriation necessarily occurs whenever the attorney withdraws funds from a co-mingled account for his or her own purpose and, as a result, leaves the account insufficient to cover all client funds, and such a misappropriation is never innocent. It is not necessarily wilful, however, or for the conscious purpose of unlawfully taking funds held in trust for another.

**4.** In those cases explained *supra,* where the Court determined that a "misappropriation" occurred, neither we nor the hearing judges went so far as to find related violations of MRPC 8.4(c), which would implicate a more deliberate and reprehensible intent. MRPC 8.4, cmmt. 2 ("Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust, or serious interference with the administration of justice are in that category."); *Attorney Grievance Comm'n v. Nussbaum,* 401 Md. 612, 646, 934 A.2d 1, 21 (2007) (observing that the attorney facing discipline cited "a number of cases where a sanction less than disbarment was ordered in a misappropriation case," but that, "[i]n every case cited, except [*Attorney Grievance Commission v.*] *Calhoun*[, 391 Md. 532, 574, 894 A.2d 518, 543 (2006)] ... the hearing judge did not find a violation of MRPC 8.4(c)").

funds into his personal operating account, violated MRPC 1.15(a), Maryland Rule 16–604, and § 10–304. The judge also concluded that Tauber engaged in conduct that is "prejudicial to the administration of justice"—that is, "fail[ed] to know about and have in place a system that would protect his client's funds"—and thus violated MRPC 8.4(d). Nonetheless, the hearing judge did not conclude that Tauber acted with dishonest or fraudulent intent. Perhaps Tauber "was not aware of the need to deposit [client] funds in a trust account" and "believed that he was handling the funds ... in an appropriate [manner]," as the hearing judge concluded. Regardless, he conducted his law practice in disregard of the MRPC, the Maryland Rules, and the Maryland Code. These behavioral standards are designed to protect the public and the decency of the legal profession. *See Awuah*, 346 Md. at 435, 697 A.2d at 454. Such haphazard treatment of client funds should not (and is not usually) taken lightly, as our jurisprudence demonstrates. In view of the precedential and factually-similar body of law cited *supra*, I would impose the more fitting and consistent sanction of indefinite suspension, with the right to apply for reinstatement no sooner than ninety days after the effective date of the mandate.

Judge BATTAGLIA authorizes me to state that she joins the views expressed here.